FELTON v. BULLARD.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1899.)

No. 617.

**1.** MASTER AND SERVANT — INJURY OF RAILROAD EMPLOYE FROM DEFECTIVE CARS—OHIO STATUTE.

Section 2 of the Ohio act of April 2, 1890 (87 Ohio Laws, 149), which makes it unlawful for any railroad corporation to knowingly or negligently use or operate any car that is defective, or upon which any attachment is defective. makes no distinction between the cars owned by the corporation and foreign cars which it may operate, and the duty of proper inspection applies equally to both; and under the further provisions that, if any employé shall receive an injury by reason of any defective attachment, the company shall be deemed to have had knowledge of the defect, and proof of the defect and injury shall be prima facie evidence of its negligence, as construed by the supreme court of the state, to overcome the presumption of knowledge on the part of the company, raised by the statute on such proof, it is not sufficient to prove that the company furnished a sufficient and competent inspector, but actual and proper inspection, or its equivalent, must be shown.

**2.** SAME—DUTY OF RAILROAD COMPANY TO INSPECT FOREIGN CARS.

As a matter of general law, independently of statute. a railroad company owes to its servants engaged in handling or operating foreign cars on its road the legal duty of not exposing them to dangers arising from defects which might be discovered by reasonable inspection before they are admitted into its trains, and for the negligence of an inspector in that regard the master is responsible.

**8.** SAME—SUFFICIENCY OF INSPECTION...

A mere visual inspection of the grab irons constituting the ladders on cars, which brakemen are required to use more or less while the cars are in motion, cannot be held, as a matter of law, to be a sufficient inspection; and whether an inspection made was in fact a reasonable and sufficient one is a proper question for the jury.

**4.** SAME—ACTION FOR DEATH OF BRAKEMAN—TRIAL.

In an action against a railroad company to recover for the death of a brakeman, caused by the breaking from the car of a handhold forming part of the ladder upon which he was descending from a moving car, the testimony of an inspector that he inspected the car on the day before the accident by climbing up the ladder at one end and down that at the other is insufficient to warrant a peremptory instruction for the defendant. where the evidence disclosed that the iron was held to the car at one end only by a piece of a rusted screw half an inch long and imbedded in rotten wood.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Lawrence Maxwell, for plaintiff in error.

Harvey Scribner, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge. Edward McCarn, a brakeman in the service of the plaintiff in error, was killed, while descending from the top of a moving car, by reason of the defective character of a grab iron, which broke off and threw him beneath the wheels. This grab iron was attached to the end of a foreign car, which belonged to the Grand Trunk Railway Company, which had been received the day before from a connecting railway company. The grab iron was of the usual construction, and had been attached to the end of the car, in the usual way, by two screws, each of from three to four inches in length; one being at each end of the iron. An examination after the accident disclosed the fact that one of these screws was badly rusted, and had long been broken, so that it supported one end of the iron by a stub only one-half inch in length, which rested in wood much decayed. The screw at the other end appeared to have been freshly broken or wrenched in two; a part being pulled out with the grab iron when it came off the car. That this defective grab iron was the direct cause of the death of the intestate was not disputed. It constituted an attachment upon a car at the time being operated by the receiver upon a line of railway within the state of Ohio.

The Ohio act of April 2, 1890, so far as it bears upon the facts of this case, furnishes a rule of law which must govern its disposition. The second section of that act makes it unlawful for any railway corporation to knowingly or negligently use or operate any car that is defective or upon which any attachment thereto belonging is defective. It also provides that, if an employé of any such corporation shall receive any injury by reason of any defective attachment thereto belonging, the corporation "shall be deemed to have had knowledge of such defect before and at the time such injury was so sustained," and that, when the fact of such defect shall be made to appear by such employé or his legal representatives in an action against any such railroad corporation for damages on account of such injuries so received, the same shall be "prima facie evidence of negligence on the part of such corporation." 87 Ohio Laws, 149. This section of this statute recognizes no distinction between the liability of a railway company for injuries sustained by its employés through the operation of defective cars owned by such corporation and injuries sustained from defects in foreign cars. The statute applies to cars "owned and operated, or being run and operated, by such corporations." The liability is the same in either case. How, then, may this prima facie evidence of corporate negligence be rebutted? Prior to the passage of this act the decisions of the supreme court of Ohio were to the effect that a railroad company was not liable to a brakeman for the negligence of a car inspector, it being held that the brakeman and the inspector were fellow servants. Railroad Co. v. Fitzpatrick, 42 Ohio

St. 318; Railroad Co. v. Webb, 12 Ohio St. 475. The third section of this act changes the law of fellow servant in the cases to which it applies. That section provides that:

"In addition to the liability now existing by law, that every person in the employ of such company, actually having power or authority to direct or control any other employé of such company, is not the fellow servant, but superior of such other employé, also that every person in the employ of such company having charge or control of employés in any separate branch or department, shall be held to be the superior and not fellow servant of employés in any other branch or department who have no power to direct or control in the branch or department in which they are employed."

This section would seem to have no bearing upon the case now to be decided, inasmuch as the inspector employed by the receiver had no subordinates, and had no power "to direct or control any other employé" of the receiver. He was sole inspector, with no power of direction or control and no assistants. The situation is, therefore, unique. The inspector, under the decisions of the Ohio courts, which doubtless constituted a part of "the now-existing law" referred to in this section, was the fellow servant of the brakeman. This "now-existing law" is not changed by this section, except in so far as specifically provided by this enactment. Conceding, therefore, that the third section has no application to the peculiar facts of this case, we reach the inquiry as to the effect of the second section, which creates a statutory presumption of corporate knowledge of the defect from evidence of its existence and an injury sustained by an employé engaged in operation of such defective car. Is that prima facie case rebutted by evidence that the railroad corporation had furnished a sufficient and competent inspector? This question finds its answer in the case of Railway Co. v. Erick, 51 Ohio St. 146–162, 37 N. E. 128. One of the questions in that case arose upon the refusal of the trial court to instruct the jury that if the company had employed a competent inspector, whose duty it was to carefully inspect all cars and their appliances before they were permitted to go out, the company would not be liable if he neglected to make such inspection. This, in various forms, was refused. The supreme court held that the presumption of knowledge of the defective condition of the car in question, raised by the proof of the defect and injury, under the second section of the act of April 2, 1890, was not rebutted by proof of the employment of a competent and sufficient inspector. Upon this question the court said:

"The presumption of knowledge of the defect, before and at the time of the injury, is, by the statute, chargeable to the company; and this statutory presumption cannot be overcome by proof of facts which only raise a presumption that the company did not have such knowledge. Competent and careful inspectors are presumed to properly inspect the cars and their attachments, but such presumption would not overcome the statutory presumption of knowledge of defects before and at the time of the injury. It would take an actual and proper inspection, or its equivalent, to overcome the statutory presumption of knowledge of such defects. It will be noticed that this section of the statute also provides that, in the trial of a personal injury case against a railroad company, the fact of such defect in its cars or their attachments shall be prima facie evidence of negligence on the part of such corporation."

That this section of the statute constitutes a mere rule of evidence, as decided by the same court in Pennsylvania Co. v. McCann, 54 Ohio St. 10, 42 N. E. 768, and Hesse v. Railroad Co., 58 Ohio St. 167, 50 N. E.. 354, is no answer. These cases in no way diminish the weight of the case of Railway Co. v. Erick, supra, as an authoritative construction of the statute, in which it is held that the statutory presumption of knowledge is not rebutted by anything less than evidence that there was "an actual and proper inspection."

Aside from the effect to be given to the second section of the act of 1890, we hold that the duty of inspecting foreign cars is a duty due from the master to his servant, and that the master is responsible to the servant for all defects which would be disclosed by a reasonably careful inspection. The well-known course of business pursued by carriers in this country involves so large a use of foreign cars as to make it inadmissible that any distinction should be recognized between the duty of caring for the safety and protection of employés engaged in operating such cars and that exacted in respect to cars owned or controlled by the carrier. Employés can no more be said to assume the responsibility for injuries due to the defective condition of foreign cars than they can be said to assume the risk arising from defects in domestic cars which might have been discovered by proper inspection. In the one case, as much as in the other, the inspector is discharging the duty of the master to his servants, and for his negligence in this particular the master is responsible. The question is one of general, and not local, law, unless controlled by statute. It is, therefore, a question for the courts of the United States to decide upon their own judgment as to the common law controlling the question. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914; Railroad Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983.

To support the contention that, in the matter of the inspection of foreign cars, the inspector is the fellow servant of the men operating such cars, the cases of Mackin v. Railroad Co., 135 Mass. 201, and Coffee v. Railroad Co., 155 Mass. 21, 28 N. E. 1128, have been cited. In Mackin v. Railroad Co., the court, in discussing the duty of carriers to receive from other companies cars to be forwarded, said:

"The obligation of drawing cars over its road would not extend to such as were in an unsafe condition; but, as to cars so received, the duty of the defendant is, not that of furnishing proper instrumentalities for service, but of inspection, and this duty is performed by the employment of sufficient, competent, and suitable inspectors, who are to act under proper superintendence, rules, and instructions; and, however it may be as to other cars, the inspectors must be deemed to be engaged in a common employment with the brakeman, as to such cars, while in transit, and until ready to be inspected for a new service."

In the later case of Chandler v. Railroad Co., 159 Mass. 588, 589, 35 N. E. 89, the court declined to extend the exception made in the earlier cases to foreign cars employed in any way by the receiving company for its own uses during the process of forwarding them.

The rule which we deduce as having the support of the weight of authority and reason is that a railroad company owes to its servants engaged in handling or operating foreign cars the legal duty of not exposing them to dangers arising from defects which might be discovered by reasonable inspection before they are admitted into its trains. Gottlieb v. Railroad Co., 100 N. Y. 462, 3 N. E. 344; Goodrich v. Railroad Co., 116 N. Y. 398–401, 22 N. E. 397. In the case last cited the New York court of appeals said:

"It was decided in Gottlieb v. Railroad Co., 100 N. Y. 462, 3 N. E. 344, that a railroad company is bound to inspect the cars of another company, used upon its road, just as it would inspect its own cars; that it owes this duty as master, and is responsible for the consequences of such defects as would be disclosed or discovered by ordinary inspection; that, when cars come in from another road which have defects visible or discernible by ordinary examination, it must either remedy such defects or refuse to take them. This duty of examining foreign cars must obviously be performed before such cars are placed in trains upon the defendant's road, or furnished to its employés for transportation. When so furnished, the employés whose duty it is to manage the trains have a right to assume that, so far as ordinary care can accomplish it, the cars are equipped with safe and suitable appliances for the discharge of their duty, and that they are not to be exposed to risk or danger through the negligence of their employer."

This rule, as thus stated, was approved and applied in Railroad Co. v. Mackey, 157 U. S. 72–91, 15 Sup. Ct. 491. In concluding a discussion of the question, the court, speaking by Justice Harlan, after quoting from Goodrich v. Railroad Co. the paragraph we have set out above, said:

"We are of opinion that sound reason and public policy concur in sustaining the principle that a railroad company is under a legal duty not to expose its employés to dangers arising from such defects in foreign cars as may be discovered by reasonable inspection before such cars are admitted into its trains."

In the later case of Railway Co. v. Archibald, 170 U. S. 665–669, 18 Sup. Ct. 777, the supreme court again had under consideration the duty of a railroad company to its servants in respect to foreign cars, and followed the doctrine announced in the case of Railroad Co. v. Mackey, cited above, saying:

"That it was the duty of the railway company to use reasonable care to see that the cars employed on its road were in good order and fit for the purposes for which they were intended, and that its employés had a right to rely upon this being the case, is too well settled to require anything but mere statement. That this duty of a railroad as regards the cars owned by it exists also as to cars of other railroads received by it, sometimes designated as 'foreign cars,' is also settled."

That this duty is not discharged by merely furnishing an inspector competent to discharge the duty is very clear, and that this was the holding in both the cases decided by the supreme court of the United States, and cited above, is most apparent from an examination of the facts of the cases, as well as from the language employed by the court in considering the duty as one identical in character with that resting upon the master in respect to the inspection of his own cars before admitting them into its trains. That the master is responsible for the negligence of such an inspector, and that the inspector is not the fellow servant of those operating

94 F.—50

such foreign cars, is the necessary conclusion from the character of the duty.

In Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, the court held that the inspector was not the fellow servant of a brakeman who was injured through the negligence of the inspector, who failed in his duty as inspector. Upon the same grounds he is not the fellow servant of a brakeman who sustains an injury through a defect in a foreign car, provided the defect was one which might have been discovered by the exercise of reasonable care in the proper inspection of the car by the inspector.

At the close of the charge, which included much upon the general subject of the exercise of care in making such an inspection as was possible and usual when foreign cars were received, and to which no exception was taken, the court was asked to charge as follows:

"If the defect was latent,—that is, one not visible,—the defendant is not liable, if the injury occurred by reason of such latent or invisible defects."

In response to this request the court instructed the jury as follows:

"I would not put it upon the ground of visibility alone. I will give it as I have already done,—if it was not discoverable by fair and reasonable and an ordinarily prudent inspection. It does not depend upon the mere question of visibility alone, but it depends upon that. Of course, it is an important circumstance. If it was visible, so that everybody could see it, why, it would be negligence not to see it. But if it was latent and concealed, in the sense that a reasonable and ordinarily prudent inspection would not discover it, then the railroad company is not liable."

The refusal to instruct in the words of the request is now assigned as error. There was evidence tending to show that neither the broken and rusted condition of one of the screws by which the grab iron was held to the wood of the car nor the decayed condition of the wood surrounding this broken screw was visible from the surface. Indeed, the evidence strongly indicated that no mere visual inspection would have disclosed the dangerous condition of this grab iron. But would a mere visual inspection of such an attachment be due and reasonable inspection of such an instrumentality? Was no other inspection reasonable and possible, under the circumstances under which such cars are received and forwarded? Would a mere visual inspection of a car wheel be regarded as ordinary and reasonable? If the tapping of the wheel with a hammer would disclose by sound the presence or absence of a fracture which might not be disclosed to the eye, could it be said that so ready and accessible a test should not be applied? As much may be said touching the firmness and security with which this grab iron was fastened to the end of this car. This grab iron was one of the rounds in a ladder provided for the use of brakemen, whose duty called them more or less often to the top of such cars. The life of the brakeman may often depend upon the firmness with which such an iron is attached to the end or side of the car. Was there no other ready means of ascertaining whether it was properly and safely attached than a visual inspection? If the application of some force would disclose a dangerous weakness,

ought not such a test to be applied? The plaintiff in error did not regard a visual test as alone sufficient, for the inspector says that his habit was to go up such ladders at one end of a car and down the ladder at the other end. Did he do that in this instance? If he did, did he do so in such a way as to throw his weight upon this particular iron, or upon that end of the grab iron supported by the broken screw? If not, would such a test be feasible and calculated to disclose a broken screw or rotten wood? These were proper questions for the jury to consider, and it was not error to modify this request as was done.

Neither was it error to refuse the request for an instruction to find for the defendant. This request was based upon the insistence that there was no evidence upon which the jury could reasonably find that the railroad company had been guilty of negligence. The inspector testified that he did inspect this car upon the day it was received, being the day before the happening of the accident. He says he did so by going up one ladder and down the other. He also testified that neither the condition of the broken screw nor of the wood into which it had been driven could be discovered by the eye. The inspector also testified that he inspected all cars for his company, and that he frequently inspected as many as 50 in one day. It is true that he said he inspected this particular car and this particular grab iron in the manner stated; that is, by going up and down the ladder in which it was one of a series of four or five iron handholds, one above another. But it is manifest that his testimony was not based upon any memory of this particular car, but depended upon his habit and the record made of cars inspected. Did he in truth and fact test this particular grab iron by any means likely to disclose its weakness? It was held at one end only by a rusted stub of the screw one-half inch in length, and that embedded in decayed wood, though this fact did not show externally. Is it likely that this iron would not show its weakness if any weight had been thrown upon the broken screw? The grab iron was about two feet in length. If the weight of a man was thrown upon the end supported by the sound screw, it might hold. But, if that weight was thrown upon the other screw, was it likely to indicate any firmness? The facts were not voiceless. They speak for themselves. The condition of the screw supporting one end, and of the wood into which it was screwed, was such, as disclosed by examination after the accident, as to make it obvious that any strain thrown upon that end would disclose the weakness with which it was attached. Did the inspection made involve any strain upon the weak end of this grab iron? Did the inspector use this ladder at all? If so, did he use it in such way as to really afford a test of the firmness of its attachment? If the inspection made did not involve such a physical test as was feasible, and calculated to disclose just such an infirmity as existed, would not a jury be warranted in finding either that no physical test at all was made, or that, if made, it was so carelessly made as to be useless? The circumstances were such as that it was not error to take the opinion of the jury.

Let the judgment be affirmed.