[No. 8988.    Department One.    January 20, 1911.]

GILBERT GIBSON, *Appellant*, v. CHICAGO, MILWAUKEE & PUGET SOUND RAILWAY COMPANY, *Respondent*.[1]

MASTER AND SERVANT— NEGLIGENCE—SAFE PLACE—ASSURANCE— EVIDENCE. Where the foreman of railroad construction work, after a blast and complaint of loose rock, inspected the face of a rock ledge, supervised the barring down of loose rock, and informed tunnel men, who could not see the whole face of the ledge, that the place was safe, they had a right to rely thereon, and the fall of loose rock shortly thereafter is some evidence of negligence on the part of the foreman, it appearing that the place might have been made safe.

SAME—EVIDENCE—SUFFICIENCY—TRIAL—TAKING CASE FROM JURY. In such a case, the testimony of the foreman to the effect that the barring down of the loose rock was carefully done, does not warrant the court in deciding, as a matter of law, that due care had been exercised; since the foreman is an interested witness and the question is for the jury.

MASTER AND SERVANT—SAFE PLACE—NEGLIGENCE—DUTY TO INDE- PENDENT CONTRACTOR. Where defendant's foreman undertook to ren- der a working place in the side of a ledge safe from falling rock, and reported that the same was safe, the defendant is liable to men work- ing there injured by reason of falling rock and reliance on the fore- man's assurance, whether they were working as employees of the de- fendant or as independent contractors on the tunnel.

MASTER AND SERVANT—NEGLIGENCE—SAFE PLACE—PLEADINGS—COM- PLAINT. A complaint for personal injuries need not specifically al- lege that the defendants knew, and that plaintiff was ignorant of, the dangers of the working place, where these facts are to be in- ferred from the facts alleged.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered January 27, 1910, upon with-

[1]Reported in 112 Pac. 919.

drawing the case from the consideration of the jury, dismissing an action for personal injuries sustained by an employee in railroad construction work. Reversed.

*B. M. Branford,* for appellant.

*F. M. Dudley (H. M. Field,* of counsel), for respondent.

PARKER, J.—This is an action to recover damages for personal injuries. The negligence of the defendant and the injuries resulting to the plaintiff therefrom are alleged in his complaint as follows:

"That on the 16th day of September, 1909, and for some time prior thereto, the plaintiff was in the employ of the defendant and working upon the construction of said defendant's railway in camp number 75, near bridge number 17, about one and one-half miles west of Falcon, Idaho, a small station on defendant's railway; that said plaintiff was, at the said time, working as a laborer under the direction and supervision of said defendant, and that said defendant directed the said plaintiff to go and shovel away a quantity of loose dirt which had fallen down from the embankment above, and became lodged in front or at the opening of a 'coyote hole,' the latter being a hole which was made in the hillside, for the purpose of blasting loose dirt and rock to be removed in the construction of a roadbed for said defendant's railroad, and that the defendant assured said plaintiff that the said place where said plaintiff was directed to work was safe, and particularly assured said plaintiff that there was no danger of rocks falling down from the embankment above at the place where said plaintiff was directed to work. That in pursuance to the said order and direction on the part of the said defendant, the said plaintiff, relying upon the statement and assurance of said defendant that the said place was safe, went to work to shovel dirt at the said place as directed.

"That about 11 o'clock on the forenoon of said day, while said plaintiff was working for said defendant at the said place as directed, without any notice or knowledge of any danger whatsoever, and without any fault on the part of said plaintiff, a large rock rolled down over the edge of the embankment about fifty feet above where the plaintiff was at work,

and came down with great force and velocity and struck plaintiff's right arm about four or five inches above the wrist, then and there and thereby breaking the bone known as the ulna in the said plaintiff's right arm and caused what is commonly known and termed as compound fracture of the said bone, and injured the skin, nerves, tendons, muscles and ligaments of the said plaintiff's right arm, and then and there and thereby the said plaintiff's right arm, was seriously and permanently injured and disabled.

"That at all times herein mentioned it was the duty of said defendant to furnish to said plaintiff a safe place to work, and particularly to see that there were no loose rocks in or on the embankment above, which could fall down upon the plaintiff at the said place of work, and that said defendant carelessly and negligently failed to make the said place safe, and failed to remove from the said embankment loose rocks, and failed to warn and notify said plaintiff of said danger, but assured said plaintiff that said place had been made and was safe and then violated its duty to plaintiff, and that by reason of said negligence on the part of said defendant, the injuries set forth were inflicted upon said plaintiff without any fault on his part."

The defendant demurred to the complaint upon the sole ground that it does not state facts sufficient to constitute a cause of action. This demurrer was overruled by the court and the defendant answered, denying the acts of negligence charged against it; and as affirmative defense, alleged that, in the performance of his work at the time of his injury, the plaintiff was not a servant of the defendant, but was an independent contractor; that he assumed the risk of being injured in the manner alleged; and that his injuries were the result of his own negligence. Upon these issues, the cause proceeded to trial. At the conclusion of the plaintiff's evidence, counsel for the defendant challenged the sufficiency of the evidence to warrant the submission of the cause to the jury, which was by the court overruled. At the conclusion of all of the evidence, counsel for the defendant renewed their challenge to the evidence, and moved the court to dis-

charge the jury and enter judgment in favor of the defendant, which motion was granted. From this disposition of the case, the plaintiff has appealed to this court.

The contentions of learned counsel for the respective parties have to do with these questions: (1) Was the evidence bearing upon respondent's negligence and appellant's assumption of risk such as to require the submission of these questions to the jury? (2) Was respondent freed from liability for appellant's injuries because he was performing his work as an independent contractor? We will now review the facts bearing upon these questions.

There was competent evidence tending to show the following: In September, 1909, respondent was engaged in removing a rock bluff incident to the construction of its railway. In the performance of this work, small tunnels, called "coyote holes", were run into the face of the bluff some twenty feet or more at a level of about two hundred feet above the foot of the bluff, in which tunnels large quantities of powder would be exploded, breaking and loosening the rock over the tunnels so that is could be removed by a steam shovel and a small construction train. At the time in question, a ledge had been made along the bluff where the tunnels were being driven, some twenty feet or more wide, on which the train could run upon a temporary track. From this ledge, at the point where appellant was injured, the rock wall of the bluff raised almost perpendicular about thirty-five feet, and then sloped back precipitously until it attained a height of a hundred feet or more. It was composed of rock, seamed horizontally from eight inches to three feet apart, which dipped into the hill. The tunnels were driven in on a level with the ledge, and were on an average of about forty feet apart. The upper part of the bluff was covered with about a foot of earth, except in some few places the rock came to the surface. This extended down to within about sixty feet of the ledge, probably down to where the earth and surface rock had been removed in making the ledge. A person standing on the ledge

could not see near all of the wall and slope above him. On Saturday, September 11, appellant, and two other men associated with him, applied for work to Mr. Horrocks, the engineer in charge of the construction of respondent's railway. They were all experienced rock workers. It is clear that they then made arrangements with Horrocks to go to work for respondent, though there is a dispute as to the exact nature of their contract. Appellant testified:

"Q. State when if at any time you were hired by the defendant in this case, the Chicago & Milwaukee Railway Company, to work for them. A. Why I was hired at the east portal by an assistant engineer by the name of Horrocks, and he gives me a slip of paper to take over to his foreman by the name of Dan McKinnon, and get the orders from him what to do. We were hired to go over there and do rock work, to get orders from him to work, or what to do. Q. Did the defendant hire anyone else besides you at this time to go to this place to work? A. There was three of us hired, I and Anderson and Hans Christopherson. The three of us was hired to go to this place and do rock work. Q. Now where is this east portal that you were hired at? A. I couldn't say exactly how many miles to it. It is in the neighborhood —or at least I was told by Mr. Horrocks there that it should be seven or eight miles. It is about seven miles, I think, as far as I can remember. Q. From the camp where you were to work? A. From east portal to this camp where I went to work. I don't remember that particular or exactly, but my recollection is that Horrocks told me I could make it by walking over there in seven miles, he says. Q. Did you walk over? A. No, sir, we took the train in the evening and went over. Q. What was your agreement as to wages with Mr. Horrocks? A. Well, we were told that we should get three dollars seventy-five a foot for digging this coyote hole, and any other day work that was mentioned how much we should get a day for that."

On cross-examination he testified:

"Q. Now, tell us what you first said to Mr. Horrocks when you met him. A. I asked him if he had any work to let out, or any work to give to anybody; we were looking for work. He says he had some coyote hole digging over there, he said;.

and he says, contract work or day work.  He says, 'You can get it on contract', he says.  And I asked him how much he was paying.  He says, 'Three dollars seventy-five a foot.  So if you want to go over there and look at it,' he says, 'you can go over and take that one particular hole,' he says, 'if it suits you.  If it don't, see the foreman and you will get something else.' "

This testimony tends to show the authority of the foreman McKinnon, as well as the contractual relation of the parties, though we will probably find as we proceed that the exact nature of the latter is of little consequence.  Appellant and his associates went with the note to McKinnon, the foreman in immediate charge of the work.  McKinnon showed them the hole, which was then driven in about eighteen feet, and they went to work and drove it in about four feet farther during the next few days, the material therefrom being carried out across the ledge, where it was dumped over the outer edge by a wheelbarrow.

On Tuesday evening, September 14th, about six or seven o'clock, charges of dynamite which had been prepared in two tunnels, the first and second ones west of the one appellant and his associates were working at, were exploded.  This blast was not one merely for the purpose of extending those tunnels, but was a heavy blast put in upon their completion, and was for the purpose of loosening the face of the bluff for the steam shovel.  The effect of this blast was to break the rock wall above the ledge for some distance over towards the tunnel appellant and his associates were working at.  This shattered zone widened as it went higher up the bluff, where it extended out to within a few feet of, if not over, the tunnel appellant was working at.  This blast also jarred down a quantity of rock immediately in front of the opening to appellant's tunnel, blocking its entrance.  The foreman, upon having his attention called to this material in front of the tunnel and its preventing work in the tunnel, told them to clear it away and that they would get paid by the day for that work.  They thereupon proceeded with that work during

Wednesday, September 15, until about two o'clock in the afternoon, when some rock fell from the cliff above them. Being alarmed by this, they ceased work, and appellant went to McKinnon and told him of the falling rock and requested him to have the bluff made safe. McKinnon said he would make it safe, and returned with appellant to the tunnel. After looking at the face of the wall, he sent three men with ropes and tools to bar down the loose rock from the face of the bluff, superintending the work himself. He testified, in substance, that this was done with care, so as to leave no loose rock there liable to fall, so far as could be then determined. We have no testimony as to the care then exercised in this particular, save that of McKinnon himself. Appellant and his associates had entered the tunnel just before this barring down of the loose rock commenced, and continued their work there, but could not take any material out of the tunnel, and could not safely go out until about five o'clock in the evening, when the barring down had ceased. They then went out and quit work for the day.

The next morning, September 16, appellant and his associates returned and looked at the face of the wall so far as they could see it from the ledge. Whether or not they went to work before McKinnon came is not very clear, but in any event he very soon came there and told them that the place was now safe, and for them to go ahead and clear it out, referring to the loose rock in front of the tunnel. They then proceeded with their work, two of them removing the debris from in front of the tunnel, and one working at drilling in the tunnel. Nothing further occurred indicating danger until about eleven o'clock in the forenoon, when a quantity of rock fell from the wall or slope above, one of the pieces striking appellant and inflicting the injuries for which he seeks damages by this action. There was no appreciable shock or physical disturbance of any kind occurring at the time in the neighborhood. The rock evidently fell only because of its loose condition. The proper manner of barring

down the loose rock and of testing their looseness was testified to in considerable detail, and the evidence tended to show that loose rock on such a wall and slope could be discovered with great certainty. Appellant, a man of many years experience in rock work of this nature, after describing the manner of testing the wall, testified:

"Q. Now was the rock on this wall of such character that it could be barred down, as you have described here? A. Yes, sir; it could be barred down, so it would be as safe as this room right here is."

Appellant and his associates did not inspect the wall on the morning of the injury other than by looking at it from the ledge, where they could not see all of it. They evidently depended upon the assurance of McKinnon as to its safety. The mere fact that McKinnon had apparently completed the barring down was some assurance to that effect, and this was strengthened in their minds by his conversation with them that morning.

Let us first inquire what was the duty of respondent towards appellant and his associates as to the rendering the wall and slope safe from falling stone. We have noticed that appellant's foreman, McKinnon, was advised of the danger from falling stone on the day preceding the injury; that he then told appellant that he would send men up and make it safe; that he did send men up who, under his supervision, went over at least a portion of the wall barring down loose rock; that this work was apparently completed that afternoon; and that when appellant and his associates went there to work the following morning they were then told by the foreman, in substance, that the wall and slope were safe, and to go ahead and clear away the debris from in front of their tunnel.

In the light of these facts it seems clear to us that respondent then owed to appellant and his associates the duty of making the wall safe, in so far as it could be rendered safe by inspection and barring down of loose rock, and that appel-

lant then had the right to rely upon the assurance of respondent's foreman that he had caused the wall and slope to be made safe.    Appellant and his associates had no occasion at that time to inspect the face of the bluff, even should it be considered that they might have been bound to inspect it in the absence of these facts.    This being respondent's duty, and appellant having the right to rely upon the assurance of the foreman that such duty had been performed in such manner as to render the place safe, we think it follows that the falling of the rock so soon thereafter was such evidence of respondent's negligence in failing to make the place safe as required the submission of that question to the jury, unless the case is to be taken from the jury and decided as a matter of law against appellant because of the conclusiveness of respondent's evidence, which we will now notice.

For the purpose of determining whether or not respondent's evidence, as a matter of law, conclusively disproved its negligence, inferable from the facts we have noticed, we must regard the burden of such proof as resting upon respondent. We have seen that the only evidence tending to show due care in the inspection of the wall and the barring down of the loose rock was the testimony of the foreman McKinnon.    He testified as to the manner in which the men under him tested and barred down the loose rock, tending to show that it was carefully done.    Also that the men, as well as himself, were experienced in that kind of work, and that he looked over the work after its completion and found the place safe.    He was, of course, by reason of his relation to respondent and his connection with the work, an interested witness.    This brings us to the question, Was the learned trial court warranted upon this evidence alone in deciding, as a matter of law, that respondent had exercised such care in making the place safe as to relieve it from liability for the injury to appellant? When the burden of proving some disputed fact in a jury case rests upon a party, and such fact is sought to be proven

by no other evidence than the testimony of a single interested witness, a trial court is not warranted in determining, as a matter of law, that such fact has been proven. This rule, we apprehend, is subject to few, if any, exceptions. Its force as applicable to the facts of this case is well illustrated in the case of *Volkmar v. Manhattan R. Co.*, 134 N. Y. 418, 31 N. E. 870, 30 Am. St. 678. In that case the plaintiff was driving under the company's elevated railway when an iron plate with part of a broken bolt fell and struck him, causing injuries for which he sued the company. But little question was made as to the fact that the falling of the plate established a *prima facie* showing of negligence against the company. The cause was taken from the jury upon the testimony of an interested witness tending to show a careful inspection and failure to discover the loose plate. Discussing this ruling of the lower court, Justice Haight, speaking for the court of appeals, said:

"The learned General Term, in its opinion, admits, this proposition, and concedes that the fall of the plate or clip, in the absence of an explanation, raises a presumption of negligence. That court, however, reached the conclusion that the presumption was overthrown by the evidence produced on behalf of the defendant. As we have seen, that evidence was given by the witness Roach. It was his duty, as he testified, to examine carefully all rails, switches, signals, bolts and fastenings of all kinds, and to keep them tight. He further states that in June, 1885, he was engaged in following out his instructions and performed them to the best of his ability. In no place does he testify that he ever examined the bolt and clip which fell upon the plaintiff. He does not tell us how often he passed over the track, or to what extent he examined the bolts and fastenings. He only gives us his own conclusion that he performed his duty to the best of his ability. It does not appear to us that this was sufficient to remove the presumption which necessarily follows from the established fact that the bolt was broken, and in that particular the structure was out of repair and dangerous.

"But even if this evidence was sufficient to remove the presumption as held by the General Term, the credibility of the

witness would still be involved and be a question for the jury. This witness was the defendant's track walker. It was his duty to examine the bolt which was broken. If there was any negligence for which the defendant was chargeable, it was that of this witness. He was, therefore, a person interested, and possibly actuated by a motive to shield himself from blame."

It is true that decision had reference to an artificial structure maintained by the company; but in view of the evidence in this case tending to show the relation of appellant to respondent, the promise of its foreman to make the place safe, his assurance thereafter that it had been made safe, and respondent's ability to make it safe, we are not able to see that respondent's duty to appellant and his associates was in principle any different than it would have been had the wall been an artificial structure maintained by respondent. We are of the opinion that the testimony of McKinnon was not conclusive evidence enabling the court to decide, as a matter of law, that respondent was not negligent in failing to make the place safe. The following authorities are in harmony with this view. *Ireland v. Scharpenberg*, 54 Wash. 558, 103 Pac. 801; *Fireman's Fund Ins. Co. v. Oregon R. & Nav. Co.*, 58 Wash. 332, 108 Pac. 770; *Kennedy v. McAllister*, 52 N. Y. Supp. 714; *Kavanagh v. Wilson*, 70 N. Y. 177; *Babcock v. Chicago & N. W. R. Co.*, 62 Iowa 593, 13 N. W. 740, 17 N. W. 909; *Atchison & N. R. Co. v. Bailey*, 11 Neb. 332, 9 N. W. 50; *Cunningham v. Union Pac. R. Co.*, 4 Utah 206, 7 Pac. 795; *Felton v. Bullard*, 94 Fed. 781.

A considerable portion of the argument of learned counsel for respondent is devoted to their contention that appellant was performing his work as an independent contractor at the time he was injured, and for that reason respondent owed him no duty to make the place safe. We deem it unnecessary to determine whether the technical legal relation between them was that of owner and independent contractor or master and servant. There may be room for argument that either of

these relations then existed between them.   We are of the opinion that, whichever of these relations existed, the negligence of respondent, which this evidence tends to show resulted in appellant's injuries, rendered respondent liable.   It seems to us that since appellant was there at the instance of respondent, in pursuance of a business relation between them, and the assurance of the safety of the place made by respondent's foreman at so short a time prior to the injury, it is of no consequence whether appellant was there as an independent contractor or as a servant of respondent.   *Curtis v. Barber Asphalt Paving Co.*, 44 Wash. 334, 87 Pac. 345.

It is contended that appellant's complaint does not state a cause of action.   This contention of course would in no event call for an affirmance of the court's decision upon the challenge to the evidence, though it might call for a reversal of the overruling of the demurrer and permit an amendment of the complaint.   It is insisted that, "Two matters are noticeably missing from this complaint; first, all allegation that the respondent knew, or in the exercise of reasonable care, could have known, of the danger; and, second, that the appellant was ignorant of the danger."   Under the liberal rules of pleading adopted in this state we think these facts are to be inferred from the facts alleged in the complaint, though they are not specifically stated therein.   We are of the opinion that the facts pleaded constitute a cause of action.

Some effort is made to liken this case to that of *White v. Spokane & Inland Empire R. Co.*, 54 Wash. 670, 103 Pac. 1119.   We think, however, the cases are distinguishable.   In that case the company was, as a matter of law, relieved from the duty of inspection because the undisputed facts showed that there was no apparent danger calling for inspection, and had not been for a month or more previous.   In this case the danger was admittedly present only a few hours before the injury and was known to respondent.   The question here was not as to the necessity of inspection and removal of the dan-

ger, but as to whether or not the duty to remove the danger rested upon respondent, and as to whether or not it negligently performed that duty. These, we think, were questions for the jury.

The judgment is reversed, with instructions to grant appellant a new trial.

RUDKIN, MOUNT, FULLERTON, and GOSE, JJ., concur.