[No. 10341.   Department Two.   September 6, 1912.]

PERA BARACH *et al.*, *Respondents*, v. G. A. CARLSON *et al.*, *Appellants.*[1]

MASTER AND SERVANT—ASSUMPTION OF RISKS—SAFE PLACE—NEG-LIGENCE—EVIDENCE—SUFFICIENCY.   A pitman in a steam shovel crew does not assume the risk of danger from rock falling down the slope, when the steam shovel was idle, if he was in a position where he could not see the danger, even though warned of danger by one fellow servant who was contradicted by another co-servant who sometimes directed the work, where there was evidence that the rock did not fall from the place where the work was being done, but from the side of the cut where the wall was completed from which rocks were not accustomed to fall; since the master is liable if he carelessly allowed the place to become unsafe without notice to the servant.

[1]Reported in 126 Pac. 94.

APPEAL—REVIEW—HARMLESS ERROR. Error cannot be assigned in refusing to instruct that mortality tables are of little weight as evidence of life expectancy when the health of the deceased was not shown, where no question was made as to the amount of the verdict, but only to the right of recovery.

Appeal from a judgment of the superior court for Spokane county, Black, J., entered October 14, 1911, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Affirmed.

*Edward J. Cannon, George M. Ferris,* and *Charles E. Swan,* for appellants.

*Cohn & Rosenhaupt* and *T. T. Grant,* for respondents.

MOUNT, J.—The plaintiffs, being the wife and minor children of Stanisha Barach, deceased, brought this action to recover damages for the alleged wrongful death of the deceased. Upon a trial of the cause to the court and a jury, a verdict was returned in favor of the plaintiffs. The defendants have appealed from a judgment entered upon the verdict.

The principal contention of the appellants is that the evidence is insufficient to support the verdict, and for that reason the court erred in denying defendants' motions for a nonsuit, for a directed verdict, and for a judgment *non obstante veredicto,* and in entering the judgment upon the verdict.

The testimony shows that the defendants were engaged in making an excavation or a deep cut for a railroad near the town of Hooper, in this state. This work was being done by means of a steam shovel. The deceased was employed as a pitman on the steam shovel crew, which crew consisted of a foreman, a craneman, an engineer, and six pitmen. The deceased was a foreigner. He had been in this country about two years previous to his employment by the defendants. He had theretofore been employed as common laborer. His employment by the defendants consisted in removing ties

and rails from the rear of the steam shovel and placing them in front of the trucks thereof, so that the shovel could be moved forward and up to the work to be done. Deceased had been engaged in this work for about six days. The cut in which the shovel was working was about one hundred feet in width at the top, forty feet in width at the bottom, and from twenty to thirty-five feet in depth. The soil in which the work was done consisted of rocks, gravel and earth, some of which would roll down when the shovel or dipper thereof was operating in the bank at the face of the cut.

At the time of the accident, the deceased was engaged in placing ties in front of the trucks of the shovel, upon which ties rails were to be placed. The dipper of the shovel was not being operated at that particular time, because a train of cars loaded with soil had just been moved out and the shovel was waiting for an empty train to be moved in and alongside. Nick Barach, a brother of the deceased, was working on the side of the shovel opposite the deceased. He told the deceased not to go alongside of the shovel to put ties in place at that time, because of the dangerous condition of the slope on that side. The craneman, who overheard this remark and who was high up on the machinery of the shovel, told deceased that there was no danger, to hurry up with the work. The deceased was unable to see the slope on account of the machinery over the place where he was working. While he was about his work, a large rock, which rolled down from the side of the slope, struck him and killed him.

There was evidence to the effect that, at the time the deceased was employed, he was sent to work at the shovel to be under the direction of the engineer and craneman upon the shovel. The evidence of the defense was to the effect that the engineer had control of the pitman only when the foreman and superintendent of the work were absent, and that the craneman had no control whatever over the pitman unless the foreman, superintendent, and engineer were all absent,

and at the time of the accident, all these men were present. The statement that the foreman and superintendent were present was disputed.  The complaint alleged that the defendants were negligent in failing to inspect the walls of the cut, thereby permitting the place to become unsafe, and that, with knowledge of the danger, the defendants directed the deceased to perform the work where he lost his life.

Appellants argue that the doctrine of safe place has no application to this case, and that the deceased assumed the risk because the danger of falling rock was one of the dangers incident to the work.  *Cully v. Northern Pac. R. Co.*, 35 Wash. 241, 77 Pac. 202, and *White v. Spokane & Inland Empire R. Co.*, 54 Wash. 670, 103 Pac. 1119, and other cases are cited to support this contention.  We think the rule in those cases does not control this, because there the plaintiffs knew of the dangers and assumed them.  In this case the plaintiff did not know of the dangers.  He was in a place where he could not observe the condition of the slope above him.  It is true the deceased was warned by his brother that the place was dangerous, but he was not in a position to see for himself, and at the same time he was told by the craneman, who at times gave orders as a superior, that the place was safe, and he was directed to hurry with his work. The deceased thereupon, in obedience to this order, proceeded with his work and was killed.  If the craneman was not a vice principal but a fellow servant only, his statement that the place was safe tended to, and no doubt did, cause the deceased to believe that the place was safe from danger which he could not see, and caused him to disregard the warning of danger which he had received from his brother.  While the master might not be liable for the mistaken information of a coservant, still, if the master by negligence permitted the place to become unsafe without notice to the servant, the servant would not assume the risk of such unsafe place. *McLeod v. Chicago, Milwaukee & P. S. R. Co.*, 65 Wash. 62, 117 Pac. 749.

Appellants argue that the deceased must be held to have known the ordinary risks and dangers incident to work in the cut, for he must have seen that rocks of various sizes were rolling down the slope, and that the very nature of the work with its changing conditions rendered the place more or less unsafe, and having knowledge of these facts, deceased must have assumed the risk. It is true the evidence shows that, when the dipper of the shovel was digging into the bank in the face of the cut, rocks were constantly falling down, and of these dangers the deceased was, of course, aware because he could see them, and he knew that these dangers could not be guarded against by the master. The evidence is not clear as to the exact point from which the rock came which killed deceased, but the evidence is clear that the rock did not fall from the dipper or from the face of the cut where the dipper had last been working. The rock fell from a point back of the dipper and alongside the main part of the shovel, where the respondents claim the side wall of the cut was completed. The evidence shows that it fell from a point alongside of the cut, about twenty-five feet high, and which could have been reached by the dipper. In other words, the rock fell from the side of the cut and not from the face of it. It was not shown that rocks were accustomed to fall from the side of the cut and roll down against or under the shovel as this one did, and it was not shown that the deceased knew that the rock was about to fall or was dangerous. The contrary appears, and hence it follows that the deceased did not, as a matter of law, assume the risk of such dangers. *Hilgar v. Walla Walla*, 50 Wash. 470, 97 Pac. 498, 19 L. R. A. (N. S.) 367; *Fuestan v. Langan*, 67 Wash. 212, 121 Pac. 55. Under the evidence in this case, the questions of negligence of the defendants and assumed risk of the deceased were questions for the jury.

Upon the trial of the case, mortality tables showing the expectancy of life of the deceased were received in evidence. No evidence was offered showing the state of the health of de-

ceased or his habits. Defendants requested the court, for that reason, to instruct the jury that such tables were of little value or weight as evidence of expectancy of life of the deceased. This request was refused, and error is based thereon. This instruction could affect only the amount of recovery. It did not go to the right of recovery. Since no question is made upon the amount of the verdict, the refusal to give the instruction, if error, was harmless.

The remaining assignments of error, based upon the instructions, are determined by what we have said upon the assignments relating to directed verdict and nonsuit. We find no error. The judgment is therefore affirmed.

MORRIS, FULLERTON, ELLIS, and PARKER, JJ., concur.