## THE BAKER PALMER.

(District Court, D. Massachusetts.  January 14, 1908.)

### No. 40.

1. ADMIRALTY (§ 64*)—INTERROGATORIES—CONSTRUCTION OF RULE.

The extent to which the process of interrogation may be carried by a respondent under admiralty rule 32, which authorizes interrogatories in an answer "touching any matters alleged in the libel or touching any matter of defense set up in the answer," will necessarily vary according to the circumstances of each case, and must be regulated, when in dispute, by the court in its discretion, keeping in view the purpose of the rule and its limitations.

[Ed. Note.—For other cases, see Admiralty. Dec. Dig. § 64.*]

2. ADMIRALTY (§ 64*)—COLLISION—SUIT FOR DAMAGES—INTERROGATORIES.

Where a libel for collision was filed by certain persons alleged to be the sole owners of a vessel, and as such the lawful bailees of her cargo, on their own behalf "and for and in behalf of her officers and crew and a passenger thereon," the claimant of the libeled vessel may properly, by interrogatories filed with the answer, require libelants to state who all of the other parties libelant are, the capacity in which each makes his claim, and the particular damage which he claims.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 64.*]

3. COLLISION (§ 117*)—ADMIRALTY (§ 64*)—SUIT FOR DAMAGES—INTERROGATORIES.

A libel for collision occurring in the night, which alleges that after the light of the libeled vessel was seen on the starboard beam of libelant's vessel the latter held her course, "as she was bound to do," and that the libeled vessel continued her course without apparent change until the collision occurred, should allege as nearly as may be what that course was, and where it does not claimants are entitled to call for such information by interrogatories.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 117;* Admiralty, Dec. Dig. § 64.*]

4. ADMIRALTY (§ 64*)—COLLISION—SUIT FOR DAMAGES—INTERROGATORIES.

In a suit for collision, the claimant is entitled by interrogatories to call for information from libelants as to all that took place on their vessel after his own vessel was sighted, including the persons on board, their duties and positions, and what they did.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 64.*]

5. ADMIRALTY (§ 64*)—COLLISION—SUIT FOR DAMAGES—INTERROGATORIES.

In a suit for collision in the night, where the libel alleges that the loom of a vessel was seen from libelant's vessel two miles away, which proved to be claimant's vessel, he is entitled by interrogatories to call for information as to whether other vessels were seen, and, if so, what was seen of their movements.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 64.*]

6. ADMIRALTY (§ 64*)—COLLISION—SUIT FOR DAMAGES—INTERROGATORIES.

Where a libel for collision alleged the time, the course of libelant's vessel when claimant's vessel was first seen, that she held such course on the starboard tack, and the direction of the wind, none of which allegations were disputed, claimant is not entitled to interrogate as to the movements of libelant's vessel several hours previously.

[Ed. Note.—For other cases, see Admiralty, Dec. Dig. § 64.*]

In Admiralty. Suit for collision. On libelant's exceptions to interrogatories propounded in claimant's answer.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Russell & Russell, for libelants.

Benjamin Thompson and Edward S. Dodge, for the Baker Palmer.

DODGE, District Judge. Six of the claimant's 33 interrogatories are not excepted to, and these the libelants say they are ready to answer. Of the 27 others to which they except, some call for distinct allegations regarding matters about which the libel as filed is not sufficiently specific. These, which will be identified below, the libelants are clearly bound to answer, as they would have been bound to amend the libel, had exceptions been filed. But the claimant has the right to go further than this under rule 32. "Touching any matters alleged in the libel or touching any matter of defense set up in the answer" he is entitled to compel his adversary to amplify the allegations of the libel, even though not open to exceptions for insufficiency as filed, for the purpose of dispensing with the taking of proofs regarding them, or for the purpose of bringing distinctly before the court the points relied on in defense, or for the purpose of obtaining evidence in support of the defense from the personal answers of his adversary. The David Pratt, 1 Ware, 495, 509, Fed. Cas. No. 3,597; The Serapis (D. C.) 37 Fed. 436, 442; The Mexican Prince (D. C.) 70 Fed. 246; Benedict, Adm. Practice (3d Ed.) § 519.

The extent to which the process of interrogation may properly be carried will necessarily vary according to the circumstances of each case, and must be regulated, when it is in dispute, by the court in its discretion. The purposes for which it is allowed, as above stated, are to be kept in view; and it is also to be remembered that the matters regarding which interrogatories may be put are, by the language of rule 32, only the matters alleged in the libel or set up in defense by the answer, and that interrogatories are not to be used for such purposes merely as those of finding out in advance what the adversary's evidence will be, or who his witnesses are, or of obtaining the production of letters or documents not in issue, or of cross-examining the adverse party regarding the truth of the allegations made in his pleadings. The Intrepid (D. C.) 42 Fed. 185; Havemeyer's, etc., Company v. Compania Transatlantica (D. C.) 43 Fed. 90; Bock v. Navigation Company (D. C.) 124 Fed. 711. It is, however, not necessarily an objection to an interrogatory, otherwise permissible under rule 32, that some of the purposes above referred to may be incidentally accomplished by it. Interrogatories in admiralty are not to be confined within the limits allowed to interrogatories under the practice of the Massachusetts courts. The system of pleading in admiralty differs radically in character from that of the state courts, and the language of rule 32 makes it clear that the interrogating party is not confined, as in those courts, to matters material to the case he sets up in his own pleadings. Wilson v. Webber, 2 Gray (Mass.) 558.

1. This libel is brought by certain persons alleged to be the sole owners of the Maud Sherwood, and as such the lawful bailees of her cargo, on their own behalf "and for and in behalf of her officers and crew and a passenger thereon."

No decree could properly be entered in favor of persons named, on behalf of persons not named and not identified further than is here

attempted. Unless there was some reason why it was impracticable at the time, the names of the officers and of the members of the crew and of the passenger should have been stated. If there was any reason why this could not have been done, the reason should have been stated, and an amendment supplying the omission should have been filed as soon as possible. The claimant is entitled to know who all the parties libelant are, the capacity in which each of them makes his claim, and the particular damage for which he claims. If there is any question whether this principle requires the respective capacities which each filled on the vessel during the voyage to be stated in the libel, the claimant has in my opinion a clear right to require it to be stated upon interrogatories. The exception to interrogatory 1, which calls for these particulars regarding the libelants not named, must be overruled.

2. The libel, in stating the manner in which the collision between the Sherwood and the Palmer occurred, alleges that the Sherwood was close-hauled on the starboard tack, headed about S. E. by S., with the wind about S. S. W., and that these conditions continued until the collision; that the loom of a vessel which afterward proved to be the Palmer was reported on the starboard beam, and immediately afterwards her red light was seen, at a distance of about two miles; "that the Sherwood held her course, as she was bound to do," without change after the Palmer was reported; that the Palmer continued to approach on the same course as when first seen; that warning signals were sounded on the Sherwood as the danger of collision became imminent, and were continued until immediately before the collision; but that the Palmer, showing her red light only, and apparently in no way changing her course, ran into and struck the Sherwood between the main and mizzen rigging.

In two respects these allegations are not sufficient to support the claim of the libel that the Palmer was solely in fault: (1) The bearing of the Palmer when first seen is not alleged with sufficient definiteness, even though it be assumed that the "loom" of that vessel was seen, as well as reported, "on the starboard beam." The different directions which might be included under this expression are too many and too various. This insufficiency would seem to be conceded by the libelants; for they do not object to answering interrogatory 16, which calls for a definite statement upon the point. (2) If the libelants allege that the Palmer continued to approach on "the same course as when first seen," and ran into the Sherwood "without apparent change" of that course, they should allege what that course was, or at least how it compared with their own course. It may well be that they could not be expected to give the exact compass course under the circumstances, but they should allege the course as nearly as they are able from the indications they had regarding it. If they had alleged, as they ought, on which side the Sherwood was struck, and at what angle, some material would have been afforded for inferring what they claim the Palmer's course to have been, and how it involved risk of collision. It does not necessarily follow, from what is alleged, that the Sherwood was bound to hold her course without change, or that she had a right to do so. Either to cure these insufficiencies in the libel, or as amplifications to which the claimant is entitled of the allegations which relate

to the Palmer's course as they are or ought to have been, the libelants should answer, not only interrogatory 16, but also interrogatories 18, 20, 24, 25, 31, and 32. The exceptions to these interrogatories are overruled.

3. I cannot doubt that the claimant may interrogate the libelants fully regarding everything that took place on board the Sherwood, from the time the Palmer was first sighted until the collision. I think he is entitled to know, as to each person on board, where he was, what duty, if any, he was charged with, what he saw, heard, or did, and under what circumstances, during the approach of the two vessels. I therefore overrule the exceptions to interrogatories 2, 3, 15, 17, 19, 22, 23, 27, 28, and 29, and require these interrogatories to be answered. The same ruling would be made as to interrogatory 26, but for the fact that it is alleged distinctly in the libel that no change in the Palmer's course was observed, and the libelants are bound by that allegation. No contrary statement can therefore be expected at present. To this interrogatory the exception is sustained.

4. Interrogatories 9, 10, and 11 seem to me proper, in view of the allegation in the libel that the vessel whose "loom" is alleged to have been reported two miles away proved to be the Palmer. If there were other vessels in the neighborhood at or about the same time, the claimant has a right to know what was seen of them or their movements by those on the Sherwood. The exceptions to these three interrogatories are overruled.

5. The allegations being that the Sherwood kept close-hauled on the starboard tack on the course and having the wind as stated above, and there being no dispute, as appears from the answer, that the collision was after 9 p. m., I see no reason why the libelants should be required to state how far toward the northward and westward of the place of collision she had been during the afternoon or early evening, or how near Plymouth, her port of destination, she had at any time been, or how Plymouth then bore, or how the tide or wind then were, or how much further toward Plymouth she could then have gone, or how the nearest land or lights then bore, or what occasion there was for heading away from Plymouth, or at what time this was done, or all the changes in the schooner's course since made, or their occasion. All this was several hours before the collision, taking the libelants' allegations as they stand, and the inquiry regarding it seems to me too remote, as the case now stands, to be material, either in defining the issue between the parties or as tending to obtain evidence in support of the defense. The direction of the wind is not in controversy. There is a question whether it was a light or a fresh breeze; but as to the speed of the Sherwood there are no allegations either in the libel or in the answer. Interrogatory 33, which the libelants are ready to answer, inquires only as to her speed just prior to the collision. The exceptions to interrogatories 4, 5, 6, and 7 are sustained; also to interrogatory 8, which seeks to ascertain what vessels were in sight when the Sherwood changed the course she was on when nearest Plymouth, and what was subsequently seen of any of them. This, also, I regard as too remote.

6. The place of collision is alleged in the libel to have been six or seven miles N. E. by N. from Race Point light. This is definite enough, and I see no occasion for inquiring in interrogatory 14 what part of Race Point is referred to. It appears from the answer (article 4) that there is no dispute as to the place of collision; and, if there were any, the remainder of interrogatory 14 would be mere cross-examination. The exception to this interrogatory is sustained.

The result is that the libelants are required to answer, not only the interrogatories to which they have not excepted, but also interrogatories 1, 2, 3, 9, 10, 11, 15, 17, 18, 19, 20, 22, 23, 24, 25, 27, 28, 29, 31, and 32.