## CORONET PHOSPHATE CO. v. UNITED STATES SHIPPING CO.

(District Court, S. D. New York. March 14, 1917.)

1. PLEADING ⟨Key⟩8(2)—ON PLEADING FOREIGN LAW, SUBSTANCE MUST BE SET OUT.
   In pleading a foreign law or ordinance, it is not sufficient to state the pleader's conclusion as to its effect, but its substance at least must be set out.

2. SHIPPING ⟨Key⟩51—DEFENSES TO SUIT FOR BREACH OF CHARTER.
   In a suit for breach of a charter to carry tonnage, it is not a defense that the owner had the right to fill the ship with other merchandise, which could not be obtained.

3. SHIPPING ⟨Key⟩51—DEFENSES IN SUIT FOR BREACH OF CHARTER.
   In a suit for breach of a charter to carry merchandise, it is not a defense that contracts which libelant had for sale of the merchandise had been canceled.

4. ADMIRALTY ⟨Key⟩61—PLEADING MATTER IN MITIGATION OF DAMAGES.
   In admiralty, matter in mitigation of damages should not be pleaded in the answer.

5. SHIPPING ⟨Key⟩51—CONSTRUCTION OF PENALTY CLAUSE OF CHARTER NOT LIMITING RECOVERY FOR DEFAULT OF OWNER.
   A provision of a charter party, "Penalty for nonperformance of this agreement, proved damages not exceeding estimated amount of freight," cannot limit recovery by the charterer for failure of owner to enter on performance of the charter.

⟨Key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. ADMIRALTY &=64—INTERROGATORIES TO FISH INTO EVIDENCE OF INTERRO-
GATING PARTY NOT ALLOWED.

Interrogatories in admiralty serve two purposes; First, to amplify the pleadings of the party interrogated; and, second, to procure evidence in support of the libel or defense of the party interrogating. But they may not properly be used merely to fish into the evidence which the party interrogated may produce in support of his own allegations.

In Admiralty. Suit by the Coronet Phospate Company against the United States Shipping Company. On exceptions to answer and interrogatories. Sustained in part.

Max Shoop, of New York City, for libelant.

John M. Woolsey, of New York City, for respondent.

LEARNED HAND, District Judge. [1] The first defense is contained in the forty-eighth article of the answer. It alleges that the charter party under which the carriage was to be made contained the usual provision against restraints of rulers, princes, and people. It then goes on to allege that, in consequence of the Great War, "restraints, restrictions, and limitations have been placed on shipping, both under neutral and belligerent governments," among them being Great Britain and her allies, on shipments destined to Sweden and Holland, and that by reason of these restraints, limitations, and restrictions respondent was prevented and restrained from performing the charters mentioned in the libel and furnishing the tonnage.

This allegation is certainly bad as it stands. I do not mean to pass upon the question whether the British Orders in Council excused the respondent from the voyage; but I do mean to say that in pleading foreign ordinances having the force of law the pleader is bound to allege more than his conclusion of the effects of the ordinance. Lomb v. Pioneer, etc., 96 Ala. 430, 11 South. 154; Valz v. First National Bank, 96 Ky. 543, 29 S. W. 329, 49 Am. St. Rep. 306; Gibson v. Railroad, 225 Mo. 473, 125 S. W. 453. He is bound to set out its substance, so that the court may judge whether it has the effect which he ascribes. Without passing, therefore, upon the question as to whether shipments to Sweden and Holland were excused by the Orders in Council, or any other ordinances promulgated by any of the powers, the exception is sustained.

[2] The second defense is set up in the forty-ninth article of the answer. It alleges that the steamer had the option of carrying cotton or other lawful merchandise to fill the ship, and that thereby the owner was excused.

It is, of course, not an implied condition upon a charter party that it should be profitable to the owner, or of any contract of carriage that the ship should be filled. That is the owner's lookout. It would be intolerable to impose such a condition upon the shipper. The further allegation is not relevant, that the charter party was made in pursuant of a regular course of business for many years past, and that the phosphate freights were fixed upon the assumption that the ship would fill. This is far from an allegation that the charterer agreed to excuse

the owner if he could not fill. The allegation at most comes to no more than that the charterer knew that the owner expected to fill with light freight, which is not the equivalent of an undertaking to share that risk with the owner, who was in the business, and who knew what he could and what he could not do. Any change in the general market must fall upon the person who engages in the business of carriage. The exception is sustained.

[3] The third defense is contained in the fiftieth article of the answer. It alleges that the charter parties were part of an agreement between the libelant and phosphate buyers of Europe, and that the contracts for the sale of the phosphate were in commercial effect part of the same transaction as the charter parties; that the contracts for the sale of phosphate had all been canceled, and the libelant had suffered no damages from their cancellation, so that it had not suffered any damages, and it was not entitled to sue.

The defense is bad in law. If it had alleged that the charter party was only for the carriage of phosphate to fulfill a given contract, and that the contract was terminated, it might have been good; but the charter parties contained no such provision. There is no excuse for saying that they should be limited to deliveries under existing contracts only, and indeed nothing of the sort is pleaded. Furthermore, if the defense only touches damages, it is not good. It would by no means follow that the libelant could not recover damages merely because it was not sued for failure to deliver under the existing contracts. Phosphate might still be more valuable at the place of destination than at the place of shipment, and the carriage therefore of value, even if the contracts had been repudiated. Second, there is no propriety, even in admiralty, in pleading evidence in mitigation of damages in the answer to the libel, as appears below. The exception is sustained.

[4] The fourth defense, in the fifty-first article, asserts that the libelant did not have any contracts, market, or sale for its phosphate in Europe, and was not prepared to ship and deliver any phosphate at the places mentioned in the charter parties; that it has not chartered or sought to charter any other steamers to lift the phosphate.

This matter would be material on damages; but even though admiralty will dismiss a libel where the libelant proves only nominal damages, it has never been suggested that matter in mitigation of damages must be pleaded, nor is there any reason why it should be pleaded. The whole matter of damages is reserved for a reference usually, and to introduce matters of damages into the pleadings is merely to confuse the issues, as though it raised an issue which could properly arise upon the trial. The exception is sustained.

[5] The fifth defense is contained in the fifty-second article of the answer, and arises under the clause:

"Penalty for nonperformance of this agreement, proved damages not exceeding estimated amount of freight."

As matter of law this has been held not to be good in limitation of damages. Wall v. Rederiaktiebolaget, [1915] K. B. 66; Aktieselskabet Korn-Og v. Rederiaktiebolaget Atlanten (D. C.) 232 Fed. 403; Mit-

sui & Co., Ltd., v. Watts, Watts & Co., 115 Law Times Rep. 248. The same objection applies as to the third and fourth defenses, that the matter is only relevant in mitigation of damages. The exception is sustained.

The sixth defense is set forth in the fifty-third article of the answer. Like the last three, it goes only to mitigation, and it is therefore improper in the pleading. It is likewise improper because the letter in question was in no sense an accord and satisfaction between the parties, nor was it an estoppel so as to bind the respondent in any way. The exception is sustained.

[6] The other exceptions, except the last two, touch the interrogatories. Interrogatories in the admiralty serve two purposes, to amplify the pleadings of the party interrogated, and to procure evidence in support of the libel or defense of the party interrogating. Bock v. Int. Nav. Co. (D. C.) 124 Fed. 711; The Baker Palmer (D. C.) 172 Fed. 154. They should not, however, be used merely to fish into the evidence which the party interrogated may produce in support of his own allegations. This limitation upon discovery has remained even in the most modern rules of procedure. A party is of course entitled to know whether his opponent admits the truth of his own allegations, and how far, so as to avoid unnecessary preparation for trial. He is not entitled to know what evidence his adversary will produce to prove the adversary's allegations, and what evidence he must himself produce to overcome the case so made. The result will, of course, be, as it has been in the past, that he must go to trial somewhat in the dark as to what he must meet. The pleadings are intended to advise him of that, and interrogatories are proper to reduce those allegations to very specific form. They should be encouraged for that purpose, but so far as they call upon the pleader to go further, and give, not only the details of his allegations, but the evidence by which he means to prove them, they are liable to abuse. If there develop on the trial a case of genuine surprise, the court, especially where there is no jury, has ample power to protect the party surprised.

The first, second, and third interrogatories are directed to the method of computation of the libelant's damages. There can be no propriety in these inquiries: First, because they are directly contrary to the rule; and, second, because, since they only touch damages, they can in any case properly come up only after interlocutory decree. Even then they are unnecessary, as the libelant must put in its case first before a commissioner.

The fourth and fifth interrogatories make inquiries as to the contracts for the sale of phosphate in Europe, and whether they were canceled without the payment of any money by the libelant. They can be material only in the event that libelant should attempt to charge the respondent for the damages for the loss of profits under those contracts. As the libelants have alleged nothing of the sort, they may not recover special damages, and the whole inquiry is irrelevant to any issue in the case, even under damages. The exceptions are sustained.

The only relevancy of the sixth, seventh, and eighth interrogatories by any possibility is to show that the charter parties were limited to a

carriage of such phosphate as was in performance of some contract of sale, and do not survive the exception to the attempted defense in that respect. In so far as they touch damages, the same considerations apply to them as to the fourth and fifth.

The ninth interrogatory is too vague to be of any value. If the respondent shall allege any specific ordinances or regulations which are material to the controversy, possibly an interrogatory may lie directed to the respondent to require its admission that the ordinances alleged had in fact been promulgated. The pleadings are in no condition at the present time to justify such interrogatories. The exception is sustained.

The tenth interrogatory may well become material at some future stage of the proceeding. If the respondent tenders issue upon ordinances or regulations exposing a ship to search or capture which carries goods to Sweden or Holland, inquiry as to the shipments proposed and permits obtained may be relevant, because the interrogatories would then be pertinent to the respondent's case as pleaded. The exception, therefore, is sustained.

There remain the seventeenth and eighteenth exceptions to the traverses of the answer. I think the denial of the allegation of the third article of the first cause of action and the first article of the other causes of action is bad. These articles allege that the charter party was executed and that a copy is annexed to the libel and made a part of the allegation. The answer denies in general that the terms of the charter party are correctly set forth, or that the charter party annexed to the libel is a full and correct copy. The allegation is that the charters were made by the respondent's agents, and the respondent must specifically deny those provisions of the charter which are incorrectly pleaded, unless they are willing to plead ignorance. O'Keefe v. Staples Coal Co. (D. C.) 201 Fed. 135.

The eighteenth exception is good in part and bad in part. The libelant is entitled to a categorical admission or denial of the allegation that the respondent has failed, refused, or neglected to name or furnish a steamship to the libelant, and it is not a categorical answer to say that it has not carried the precise cargo mentioned. As to the allegation of demand, that is sufficient, and payment must be pleaded affirmatively, if the respondent is to rely on it, no matter what the pleading of the libelant may be. The exception is sustained as indicated, but no further.

The decree, therefore, will be that all the exceptions are sustained in toto, with the exception of the eighteenth, which is sustained to the extent noticed. The respondent will have leave to plead over within 10 days after the order is entered.