**THE P. & M. No. 3.**

**PENNSYLVANIA R. CO. v. UNITED STATES.**

No. 17405.

District Court, E. D. New York.

Aug. 2, 1945.

Burlingham, Veeder, Clark & Hupper, of New York City, for libelant (opposed).

KENNEDY, District Judge.

The libel alleges that libelant owns the scow P. & M. No. 3 which, on April 6, 1943, was moored at the end of Pier 1, Bush Docks, Brooklyn, N. Y., with her starboard side to the pier. Libelant says that at about ten in the morning two Army tugs landed a tow outside of scow P. & M. No. 3 and negligently collided with her port side, giving her serious damage.

Libelant has propounded interrogatories, ten in number, to all of which respondent has excepted on three grounds: (1) Because they seek to elicit matters not properly within the scope of interrogatories, (2) because they are "irrelevant, incompetent and form no part of the issues of the case, and are a fishing expedition and seek to pry into the private affairs of respondent," and (3) because in part, at least, they call for the contents of records, inspection of which might affect the security of the port. I turn to the interrogatories themselves.

Interrogatory No. 1 requires that respondent identify the tug or tugs that towed P. & M. No. 3 to the end of Pier 1, Bush Docks, when she was moored there, and when she was shifted. Inasmuch as the libel itself alleges that P. & M. No. 3 was properly moored just prior to the collision, I sustain the exception to this interrogatory.

Interrogatory No. 2 requires respondent to identify the tug or tugs that hung up a tow outside of P. & M. No. 3 on the morning of April 6, 1943, and to identify the barges in such tow. I overrule the exception to this interrogatory. The information is clearly pertinent. The propriety of interrogatories, the purpose of which is to identify the vessel at fault, has been specifically upheld. The Coast Transit No. 2, D.C.E.D.N.Y.1935, 12 F.Supp. 988.

Interrogatories Nos. 3, 4, 5 and 6 can be considered together. Libelant seeks to elicit the names of any and all barges that moored at the end of Pier 1 on the morning of April 6, 1943, the names of any and all Army tugs operating in that vicinity on that day, the names of any and all barges landed there during that morning, and concerning the Army tugs operating in that vicinity, the numbers and names of the barges which each had in tow and the intervals of time during which they were being towed. It seems to me that all of

T. Vincent Quinn, U. S. Atty., of Brooklyn, N. Y., for respondent (in support of exceptions).

this is too sweeping. The libel is very explicit, as it should be, and it says plainly that the damage to P. & M. No. 3 was caused by a collision at 10 A. M. on April 6, 1943, between the scow and two Army tugs which were seeking to land a tow outside of it. I cannot imagine what purpose would be served by requiring respondent to furnish all the information which the interrogatories under consideration seek, unless libelant is in doubt of the actual time and place of the collision. If that be the case, then, surely, the interrogatories under attack are in reality in the nature of a fishing expedition, and would probably come within the condemnation of cases like Coronet Phosphate Co. v. United States Shipping Co., D.C.S.D.N.Y.1917, 260 F. 846, 849.

■ In interrogatory No. 7 libelant seeks to find out whether any of the Army tugs reported a collision between a scow and a tow on that morning, and also the contents of the report. An interrogatory somewhat similar in form was allowed by Judge Hulbert in The Dalzellace, D.C.S.D.N.Y.1934, 10 F.Supp. 434, 435, but as Judge Conger points out in Shelton v. United States, D.C.S.D.N.Y.1939, 27 F.Supp. 801, 802, the decision as reported is somewhat misleading. As a matter of fact, Judge Hulbert merely ordered categorical answers, but did not require the answering libelant to furnish the contents of reports or even to give the names of the reporting employes. I think in this case respondent should be required to say whether or not such a report was made and who made it. Aside from this, the exceptions to interrogatory No. 7 are sustained.

■ Interrogatory No. 8 requires the respondent to furnish copies of the logs, towing sheets or other records kept by members of the crews of the Army tugs "heretofore mentioned." Even if this refers merely to the two tugs involved in the collision it is too broad. I know that in some instances general inspection of ships' logs have been permitted. The Dalzellace, D.C.S.D.N.Y.1934, 10 F.Supp. 434;

The Silvercypress, D.C.S.D.N.Y., 1939 A. M.C. 519, not officially reported; Petition of Pennsylvania R. Co. et al., D.C.S.D.N.Y., 1940 A.M.C. 587, not officially reported. Nor do I give much weight to the argument that if such information is desired, it should be secured by discovery rather than by interrogatories. In the past, not much attention has been paid to this technical argument. The President Polk, D.C.E.D.N.Y. 1929, 37 F.2d 102; The Hendrick Hudson, D.C.E.D.N.Y.1932, 1 F.Supp. 220; The Cleona, D.C.S.D.N.Y.1930, 37 F.2d 599, 600. However, in the case at bar it is urged that security reasons require that the information be withheld. This is not a very strong argument, since the collision took place more than two years ago, but it has some weight. I think that the respondent should tell the libelant whether the logs or towing sheets or records of any of its tugs operating near Pier 1 on April 6, 1943 contain an entry relating to a collision with a scow moored at the pier, and if so, what that particular entry is. The exceptions to this interrogatory are, therefore, sustained except as indicated.

■ Interrogatories Nos. 9 and 10 are calculated to elicit whether respondent made dock checks on April 5, 1943, and on April 6, 1943. For substantially the same reasons, which I have indicated in dealing with interrogatory No. 8, I hold that if the dock checks were made on April 6, 1943, and there is any reference in them to a collision between Army tugs and a scow at Pier 1 during the forenoon of April 6, 1943, these entries should be furnished to libelant.

It may happen that despite my effort to prevent it, even the entries in the limited form which would be furnished under my ruling may contain information bearing upon port security. This will be disclosed by the respondent's efforts to comply with the rulings made above. If that should happen I will entertain an application for a rehearing, at which time I will attempt to prevent improper disclosure of such matter.

Submit order.