[No. 4414. Filed June 23, 1904.]

35  241
39  638

ALVIN LEWIS CULLY, *Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents.*[1]

DISCOVERY—INTERROGATORIES—ACCIDENT REPORT—CONFIDENTIAL COMMUNICATIONS. In an action against a railroad company for personal injuries to an employe, it is proper to strike out from interrogatories for a discovery, propounded to the defendant under Bal. Code, § 6009, one that compels the defendant to produce the accident report and confidential correspondence touching the case, since such communications are privileged.

SAME—INSPECTION OF PAPERS. Doubted whether the production of documentary evidence can be enforced by interrogatories under Bal. Code, § 6009, in view of § 6047, making provision for their inspection.

MASTER AND SERVANT—NEGLIGENCE—SAFE PLACE—INJURY TO SERVANT BY SLIDE IN GRAVEL PIT. An employe working in and about a gravel pit cannot recover for injuries received by reason of a slide, where there was no evidence of negligence on the part of the master in failing to discover the danger or to give warning thereof, since the rule that he must furnish a safe place in which to work has no application to that class of cases.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered June 11, 1902, upon granting a nonsuit, after a trial on the merits before the court and a jury, in an action for personal injuries sustained through a slide in a gravel pit.

*Gable & Seabury* and *Million & Houser,* for appellant, cited the following cases as sustaining the liability under similar facts, viz: *Chicago etc. Brick Co., v. Sobkowiak,* 148 Ill. 573, 36 N. E. 572; *Haas v. Balch,* 56 Fed. 984; *Holden v. Fitchburg R. Co.,* 129 Mass. 268, 37 Am. Rep. 343; *Rogers v. Leyden,* 127 Ind. 50, 26 N. E. 210; *Lynch v. Allyn,* 160 Mass. 248, 35 N. E. 550; *Hennessy*

[1]Reported in 77 Pac. 202.

16-35 WASH.

*v. Boston,* 161 Mass. 502, 37 N. E. 668; *Daly v. Kiel,* 106 La. 170, 30 So. 254; *Cook v. St. Paul etc. R. Co.,* 34 Minn. 45, 24 N. W. 311; *Fitzsimmons v. Taunton,* 160 Mass. 223, 35 N. E. 549; *Bartolomeo v. McKnight,* 178 Mass. 242, 59 N. E. 804; *Breen v. Field,* 157 Mass. 277, 31 N. E. 1075; *Connolly v. Waltham,* 156 Mass. 368, 31 N. E. 302; *McMillan Marble Co. v. Black,* 89 Tenn. 118, 14 S. W. 479; *Kranz v. Long Is. R. Co.,* 123 N. Y. 1, 25 N. E. 206, 20 Am. St. 716; *City of LaSalle v. Kostka,* 190 Ill. 130, 60 N. E. 72; *Coan v. City of Marlborough,* 164 Mass. 206, 41 N. E. 238; *Carlson v. Northwestern Tel. Co.,* 63 Minn. 428, 65 N. W. 914; *Soyer v. Great Falls Water Co.,* 15 Mont. 1, 37 Pac. 838; *Christianson v. Pacific Bridge Co.,* 27 Wash. 582, 68 Pac. 191.

*Jas. F. McElroy, B. S. Grosscup,* and *Wilbra Coleman,* for respondents, cited the following cases as denying the liability under similar facts, viz: *Walsh v. St. Paul etc. R. Co.,* 27 Minn. 367, 8 N. W. 145; *Olson v. McMullen* 34 Minn. 94, 24 N. W. 318; *Pederson v. Rushford,* 41 Minn. 289, 42 N. W. 1063; *Quick v. Minnesota Iron Co.,* 47 Minn. 361, 50 N. W. 244; *Welch v. Brainerd,* 108 Mich. 38, 65 N. W. 667; *Showalter v. Fairbanks, Morse & Co.,* 88 Wis. 376, 60 N. W. 257; *Swanson v. Great Northern R. Co.,* 68 Minn. 184, 70 N. W. 978; *Naylor v. Chicago & N. W. R. Co.,* 53 Wis. 661, 11 N. W. 24; *Johnson v. Ashland Water Co.,* 77 Wis. 51, 45 N. W. 807; *Consolidated Coal etc. Co. v. Clay's Admr.,* 51 Ohio St. 542, 38 N. E. 610; *Galveston R. Co. v. Lempe,* 59 Tex. 19, 11 Am. & Eng. R. Cas. 201; *Paule v. Florence Min. Co.,* 80 Wis. 350, 50 N. W. 189; *Finlayson v. Utica Min. Co.,* 67 Fed. 507; *Anderson v. Winston,* 31 Fed. 528; *What Cheer Coal Co. v. Johnson,* 56 Fed. 810; *Minneapolis v. Lundin,* 58 Fed. 525; *Balch v. Haas,* 73 Fed. 974.

PER CURIAM.—This is an action brought in the superior court of Skagit county, by Alvin Lewis Cully, by Charles Cully, his guardian *ad litem,* plaintiff, against Northern Pacific Railway Company and T. B. McDermott, defendants, to recover compensation for personal injuries sustained by said plaintiff. From a judgment of nonsuit and dismissal entered against him in the lower court, plaintiff appeals.

Appellant alleges in his complaint that, on or about August 5, 1901, he sustained serious injuries through the negligence of respondents in failing to provide him a safe place in which to work. The following facts are amply borne out by the record: On or about the 29th day of July, 1901, respondent Northern Pacific Railway Company was engaged in taking gravel from a gravel bank, near the town of Sedro-Woolley, in Skagit county. The crew of men engaged in the work of excavating the gravel and loading it on the cars was under the direction and control of respondent T. B. McDermott, as foreman of the crew. On or about the day last mentioned, appellant, being at that time between seventeen and eighteen years of age, although doing a man's work and drawing a man's pay, was employed by said McDermott to assist the crew in the work in hand, the particular duties assigned him being to assist those of the crew whose duty it was to attend the jackscrews on the steam shovel, and take up and relay the track, upon which the steam shovel was operated, as the necessity of the work from time to time required its position to be changed.

In the process of removing gravel from the bank and loading it on the cars, a steam shovel was used. Respondents had been engaged for some time in taking gravel from the bank in question, prior to the employment of appel-

lant, and, in the process of so doing, had cut into the face of the bank to a considerable extent, necessitating the building of the track, on which the steam shovel was being operated, and the side track used for the gravel cars, within the cut. The excavation had advanced into the bank to such an extent that the height of the embankment, caused by the excavation, was between thirty and forty feet, on the day of the accident. Either early on the same day or the day before, a stratum of blue clay had been struck, which undoubtedly added to the danger of a slide taking place.

On the afternoon of the 5th day of August, 1901, appellant was assisting another workman by the name of Hale Rhodes in laying and spiking down track in the rear of the steam shovel, preparatory to moving the shovel to another position. Rhodes was engaged in spiking, and appellant was holding or "pinching" the rails in position to be spiked, by the use of a "claw" or "pinch" bar, respondent McDermott standing by. The bar which appellant was using was not working satisfactorily, and some one—it does not clearly appear who—suggested, "Get a line bar;" whereupon McDermott, by pointing, directed attention to a bar lying a short distance away, between the steam shovel and a car standing opposite on a parallel track. Appellant immediately proceeded down between the steam shovel and the standing car to get the bar pointed to, and was in the act of picking it up, when a large mass of the bank broke away from the top, and, before appellant had time to change his position, came down with great violence, striking the steam shovel with such force as to carry it off the track, carrying it over against the opposite car, and pinning appellant between the steam box of the steam shovel and the deck of the car, resulting in the injury.

The separate answers of respondents put in issue the material allegations of the complaint, and further alleged, as separate defenses to the action, assumed risk, contributory negligence, and negligence of fellow-servants. The affirmative matter in each answer was denied in the reply.

Prior to the trial, appellant, pursuant to § 6009, Bal. Code, propounded to respondent company certain written interrogatories, to all of which the respondent made answer, except interrogatories numbered 19 and 20, which are as follows:

"No. 19. If such report was ever made, who made it, and to whom was it made, and what action, if any, was ever taken by the company with reference thereto?

"No. 20. Attach to your answers herein all reports regarding the accident, and all correspondence with the person or persons reporting said accident with reference thereto."

On motion of counsel for the railway company, these two interrogatories were stricken out by the lower court, on the ground that the same were incompetent, irrelevant, and immaterial, to which ruling appellant excepted. It appears from the transcript that the respondent company answered in the affirmative interrogatory No. 18, that a report of appellant's said injury was made to the company.

We are clearly of the opinion that these interrogatories were properly stricken. It seems to us that it would be a very dangerous and unjust practice to require the defendant, in this character of cases, to produce all of the correspondence, reports, and documents which he may have touching a case at issue, all of which must necessarily be of a strictly confidential character. Assuming that this correspondence disclosed admissions of the confidential

agents of the defendants against the interests of the defendants, they are not such admissions as would be admissible in evidence. We can conceive of no reason why a different rule should apply in this case than prevails in the case of privileged communications generally. The statute which authorizes the filing of "interrogatories for the discovery of facts and documents material to the support, etc., of the action," does not contemplate that the plaintiff shall be permitted to have free access to the defendant's private correspondence and papers, in order that he may not only discover whether facts and documents, material to the issue, existed therein, but learn the defendant's line of defense as well. It is highly probable that §§ 6009 and 6047, Bal. Code, were intended to supersede the old practice which authorized a bill of discovery, but Mr. Pomeroy, in his work on Equity Jurisprudence, at § 201, in referring to the old practice, says:

"The fundamental rule on this subject is, that the plaintiff's right to a discovery does not extend to all facts which may be material to the issue, but is confined to facts which are material to his own title or cause of action; *it does not enable him to pry into the defendant's case,* or find out the evidence by which that case will be supported," etc.

The record fails to disclose the particular evidence sought to be obtained. Mr. Hageman, in his work on Privileged Communications, at page 32, says:

"So where a plaintiff at the instance of the solicitors sent out a gentleman to India for the express purpose of acting as the solicitors' agent in the collection of evidence respecting a pending suit, letters written by the agent either to the plaintiff or his solicitors on the subject of the evidence have been regarded by the court "as confidential communications."

At page 750, Vol. 6, Enc. Plead. & Prac., the rule is laid down that,

"Communications to any person whose intervention is necessary to secure and facilitàte the communication between attorney and client are privileged."

It seems to us that the communications sought to be obtained in his suit come squarely within the rule above laid down as privileged. It may well be doubted whether, under § 6009, *supra,* the production of any documentary evidence could be demanded, in view of the provisions of § 6047, Bal. Code, which makes ample provision for the inspection of books and papers in the hands of the opposite party material to the issue, and for permission to make copies thereof.

Granting a nonsuit is the next error assigned. The appellant seeks to invoke the rule in this case that it is the duty of the master to furnish the servant with a safe place in which to work. This rule, however, has no application to this class of employment. As was said in *Kath v. Wisconsin Cent. R. Co.,* (Wis.), 99 N. W., at page 221:

."The place to work is being changed constantly, and is necessarily incomplete and dangerous; and the employe knows it, and accepts such risks as are ordinarily present in such operations;"

citing *Porter v. Silver Creek etc. Co.,* 84 Wis. 418, 54 N. W. 1019; *Gulf etc. R. Co. v. Jackson,* 65 Fed. 48; *Moon Anchor etc. Mines v. Hopkins,* 111 Fed. 298; *Armour v. Hahn,* 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440. To the same effect also is *Swanson v. Great Northern R. Co.,* 68 Minn. 184, 70 N. W. 978, and the statement of facts in that case is almost identical with that in the case at bar. In a concurring opinion by one of the justices, it is said:

"In this case the inferior servant injured knew, or should have known, as much about the dangers which he

was encountering as the foreman knew, or could have been expected to know. They stood upon an equal footing. . . . In this respect the case is different from *Carlson v. Exchange Co.*, 63 Minn. 428, [65 N. W. 914], where a large crack had formed in the soil above the excavation, which the foreman knew, but which the inferior servant injured did not know, and was not in a position to observe. He was injured by reason of the foreman's neglect in failing to warn him."

The evidence shows that the foreman repeatedly informed the workmen of the danger incident to the employment, that the workmen frequently talked over the liability of a slide occurring, and were constantly on the lookout for a slide; and, although the plaintiff went upon the stand, he failed to give any evidence to the effect that he was not warned, or that he did not hear the talk between the workmen to the effect that a slide was likely to occur at any time. The appellant uses this language in his brief: "Nor is there a scintilla of proof to show that appellant ever joined in these discussions or ever heard them." From this statement we are led to believe that the appellant must have been laboring under the impression that the law imposed the duty upon the defendant to prove want of negligence. This, however, is not the law. The burden was upon the appellant to prove negligence upon the part of the respondents. The labor being performed was of a hazardous character, and the appellant's own witnesses, upon cross-examination, testified that the respondents constantly kept men upon the top of the bank to watch for indications of a slide, to keep the bank clear of logs, etc., and shoot down the bank when it became undermined. And there is no evidence that these men were not carefully selected with reference to the duty which they had to perform.

In our judgment the respondents were clearly entitled to a nonsuit. The judgment is affirmed.