Davis, J.
It is earnestly argued in behalf of the defendant in error, and that also seems to be the view entertained by the circuit court and the court of common pleas, that a witness who is testifying in a deposition before a notary public may be compelled to produce any document which by any possibility may become pertinent on the trial of the case in which the deposition is taken. It is asserted that In re Rauh, 65 Ohio St., 128, is authority for this proposition; and it is contended that the reports which had been made to the plaintiff in error, as the claim agent of the company, are admissions by the company, and that if the motorman and conductor who made these reports should testify on the trial, of the case, the company and its agents might be compelled to produce the reports for the possible purpose of contradiction. It is also asserted, although it is not even suggested how or why it might be so, that these reports may become evidence relat *10 ing to the merits of the action and as such the company might be compelled to produce them for evidence or inspection. It is even seriously maintained that a party taking a deposition has a greater privilege under the law than he would have on the trial of his case, in that the witness must produce any document called for although he may believe that it is privileged, and in that the witness must answer impertinent and incompetent questions although he may believe that the answers would be privileged and although the answers would not be admissible if offered to the jury on the trial of the case. And here again it is claimed that the case of Rauh, supra, and other cases in this court and elsewhere, support this contention.
It was clearly pointed out in Ex parte Jennings, 60 Ohio St., 319, that neither the officer who takes a deposition nor the court on the trial of the case, has power to punish a witness for disobedience of a subpoena or a refusal to answer except when the witness has been “lawfully ordered.” Section 5252, Revised Statutes. And in that case and the Rauh case also it was said that when the witness undertakes to decide upon the question whether he has been “lawfully ordered” he does so at his own peril. It is the same whether a question of privilege is involved or whether it is only a matter of incompetent or irrelevant evidence. It is true that in the Rauh case the qualifying clause, “unless the interrogatory involves a question of privilege,” was thrown in. It would have been clearer if that clause had been omitted or if it had been said “a question of conceded privilege;” but it is plain that when the privilege claimed is disputed the witness *11 takes- the same chances upon a refusal that he does upon a refusal to answer an incompetent question. Accordingly it was nowhere said in either of the decisions of this court already referred to, nor was it intended to he inferred, that a witness might be compelled to surrender to his adversary a coveted document, before the right to compel production of it had been submitted to the judgment of a competent tribunal; but the correlative proposition that a witness might take the chances of being sustained on a refusal to answer an incompetent or irrelevant question was distinctly asserted. It would seem, therefore, that the power of a notary public in the taking of depositions and the limitations imposed thereon have been clearly defined by the statutes and the previous decisions of this court.
The counsel for the defendant in error concede in their brief that questions 3, 5, 6, 7 and 8, which the witness refused to answer upon advice of counsel, because they were immaterial, irrelevant and incompetent and because they call for hearsay testimony, “would be inadmissible if offered to a jury on the trial of the case, because of the rule against hearsay.” Yet counsel still insist that the witness may be compelled by imprisonment to disclose facts which they admit could not be admissible on the trial. Prom what we have already said it results that the notary public had no such power. In Ex parte Jennings, it was said in the opinion, “Indeed it does not seem to have been finally determined in any case that the personal liberty of the citizen is of so little importance that it should yield to a desire to gather food for idle gossip. ’ ’ But in the present case this is all that such a fruitless extortion of *12 testimony would result in, unless it would be to disclose to the plaintiff the names of witnesses for or against her adversary; and it is elementary that a party cannot be required to aid his opponent in that way. In answer to this it is urged that an objection to the relevancy or competency of evidence cannot be made by a mere witness, but it must come from a party to the action. However plausible this argument may seem, Ex parte Jennings conclusively shows that it is not universally sound. Besides, the witness in this case was an officer and representative of the defendant company, and it is through and by means of him that the plaintiff is here seeking to compel answers to questions and to compel the production of papers which are shown not to be in the possession or control of the witness, except constructively by virtue of his authority as an official of the defendant company. The common pleas court held that the witness was not in contempt for refusing to answer these questions and in this we think the judgment of that court was right.
Both the common pleas court and the circuit court held that the witness was in contempt for refusing to answer this question, viz.: “Who was the division superintendent in May, 1902, of the division to which the College Hill-Main line belonged?” The issues in the case of Josephine Pace v. Cincinnati Traction Company were made up more than two weeks before this deposition was taken. The petition and answer are a part of the record in this proceeding; and it does not appear that by any possibility the name of the division superintendent could be material or even relevant testimony. It is not alleged that the division superintendent was *13 one of the agents of the defendant whose negligence in operating' the car resulted in the plaintiff’s injury, and if it were so alleged, it does not appear in the record that the names of the division superintendent, the conductor and motorman would add anything more to the proof of negligence by the company than proof of the names of passengers on the car or of other persons who were witnesses to the accident. So it seems that the only purpose of this inquiry, as of all of the others, was to compel the defendant in the suit to disclose before the trial the sources of its information in regard to the case and the names of its possible witnesses. Under the circumstances and under the issues as they stand the question was clearly incompetent and the order by the notary that the witness should answer it, as well as the commitment for refusal to answer it was not “lawfully ordered.”
But it is contended that if the question is not relevant now, it may become so by the time of the trial, because by that time the issues may be so changed that it may be vital. The witness has had no opportunity to judge of the relevancy of the question to such potential issues and he has not refused to answer it under any issue except as now made in the case. We apprehend that in this land personal liberty and security of property do not hang upon such a slender and precarious thread as counsel suggest
It was held in the case of Rauh, supra, that a notary public has power to punish a witness for contempt by imprisonment when the witness refuses to obey a subpoena duces tecum, directing him to bring with him any book, writing or other thing under his *14 control, which, he may be compelled to produce as evidence. What may he be compelled to produce? And how may he be compelled to produce it? These questions are clearly answered by sections 5289 to 5298 inclusive, of the Revised Statutes. Section 5289 provides that the court may require the parties to an action “to produce books and writings in their possession or power which contain evidence pertinent to the issues, in cases and under circumstances where they might heretofore have been compelled to produce the same by the ordinary rules of proceeding in chancery.” The sections providing for inspections and copies of writings, for reference to a master and for action for discovery may be passed over as not material to the present discussion. Section 5289 limits the power to compel the production of books and writings, 1. To such as are pertinent to the issue and, 2. To cases and under circumstances where the parties might heretofore have been compelled to produce the same by the ordinary rules of proceeding in chancery. Under these limitations could the court compel the production of the reports which were made to this witness under the rules of his company and for the purpose stated?
The rule in chancery as to compelling the production of documents for the purposes of evidence and inspection is generally recognized and clearly defined. It is to the effect that a plaintiff is entitled to a discovery of such facts or documents in the defendant’s possession or under his control as are material and necessary to the plaintiff’s case; but that this right does not extend to a discovery of the manner in which the defendant’s case is to be estab *15 lished, nor to evidence which relates exclusively to the defendant’s case. This rule is also applied conversely, to the defendant in an action. Wigram on Discovery, Prop. III, secs. 342-347; Combe v. Loudon, 4 Y. & C., 139, 155; 6 Ency. Pl. & Prac., 791-792, 794, 795, 804-806. “It may be added that the principle of a bill of discovery was never considered to be applicable to third persons not parties so as to secure from them before trial a disclosure of possible evidence.” 3 Wigmore on Evidence, sec. 1856, p. 2427. One question here is whether the reports which were sent to the witness and which were by him turned over to the counsel for the,corporation, relate to the plaintiff’s case and are necessary and material in establishing her case. It lies upon the plaintiff to show this and we think that she has not done so. The efforts of the plaintiff appear to us to be directed toward “fishing” for the nature of the defense and the persons by whom it is to be established, rather than to obtain competent and necessary evidence to sustain the plaintiff’s petition.
Another question is, are the reports privileged? The statement of the witness that the reports were made in anticipation of a possible litigation and that they are in possession of counsel for use in the suit which did ensue stands uncontradicted and must therefore be taken as true. This clearly brings the documents within the rule as to privilege; and we see no reason to limit or modify the rule because the defendant is a corporation and obtained its information and made its memoranda for the purpose stated, through the usual agencies of a corporation. 23 Am. & Eng. Ency. Law (2 ed.), 99-100, notes 1, 2 and 3. Davenport v. Railroad Co., 166 *16 Pa. St., 480; Carrol v. Railway Co., 82 Ga., 452; Cully v. Railway Co., 35 Wash., 241.
The plaintiff’s counsel argue with a great deal of earnestness that they have the right to extort the reports from the defendant for the purpose of using them as admissions against interest.' While it does not appear what the reports contain, nor whether they contain any statements which would make against the defendant on thé trial, it - is certain that the defendant has not made any statement to another which could be used.against it; for confidential communications between a principal and his agent are not admissions. In re Devala, 22 Ch. Div., 593.
We are of the opinion that the commitment of the witness for refusal to answer any of the questions, which he did refuse to answer, and for refusal to produce the reports was not “lawfully ordered;” and accordingly the judgments of the circuit court and the court of common pleas are reversed and the petitioner

Discharged.

Shauck, C. J., Price, Crew, Summers and Spear, JJ., concur.