## THE PRINCESS SOPHIA.

### Petition of CANADIAN PAC. RY. CO.

(District Court, W. D. Washington, N. D. October 23, 1920.)

No. 4553.

1. **Admiralty ⬅75—Equity rules as to discovery not applicable.**

The admiralty rules promulgated by the Supreme Court under the Act Aug. 23, 1842, comprehend a complete procedure in admiralty, and are independent of any other rules promulgated by that court relating to equity procedure, and in rules 27 and 32 (29 Sup. Ct. xlii) provide a procedure for the discovery of facts, and the equity rules on that subject do not govern.

2. **Admiralty ⬅75—Interrogatories should not fish into evidence of adverse party.**

Interrogations in a suit in admiralty should not be used merely to fish into the evidence which the party interrogated may produce in support of his own allegations.

3. **Admiralty ⬅75—Documents may be subject of interrogatories by defendants.**

Under admiralty rule 32 (29 Sup. Ct. xlii), the defendants in a suit by a shipowner to limit liability may interrogate the petitioner regarding documents forming the subject-matter of the litigation, but letters telegrams, etc., between the petitioner and its officers, agents, etc., are not an issue within such rule.

4. **Admiralty ⬅75—Oath in answer to interrogatories sufficient, without production of documents.**

Under admiralty rule 32 (29 Sup. Ct. xlii) authorizing the defendant to require the libelant to answer interrogatories requires only an oath in answer thereto, and does not provide an inspection of documents.

5. **Admiralty ⬅75—Exhibition of documents should have regard to substantial rights appearing from pleadings.**

Exhibitions of documents in admiralty should have regard to the substantial rights, and, as a basis for the right to the discovery of such documents, the special right must appear upon the face of the pleadings.

6. **Admiralty ⬅75—Production of privileged communications for inspection may not be required.**

Letters, reports, statements, telegrams, etc., between a shipowner and its officers, agents, etc., and the members of the crew concerning the stranding of the steamer, *held* apparently privileged, so that their production for inspection might not be required under any law or rule in a proceeding by the shipowner to limit its liability.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Admiralty ⬤=79—Powers as to forms and modes of procedure not arbitrarily applied.**

While courts of admiralty and maritime jurisdiction are given ample powers as to forms and modes of procedure, such power must not be arbitrarily applied, but must have relation to rules of evidence, or promulgated rules of courts, or statutes duly enacted.

**8. Admiralty ⬤=75—Production of unspecified documents for inspection denied.**

Where, in a suit by a shipowner to limit its liability for the sinking thereof, the claimants had copies or access to some of the documents, the production of which was sought to be compelled for inspection, but did not specify the particular documents, as would be required in an action at law, under Rev. St. § 724 (Comp. St. § 1469), the motion for production of the documents will be denied.

In Admiralty. Petition by the Canadian Pacific Railway Company, owner of the steamship Princess Sophia, for limitation of liability. On motion to require the production of certain documents, etc. Motion denied in part.

Bogle, Merritt & Bogle, of Seattle, Wash., for petitioner.
William Martin, of Seattle, Wash., for claimants.

NETERER, District Judge. The petitioner seeks to limit liability of claim for damages on account of the vessel Princess Sophia foundering on Vanderbilt Reef. The claimants take issue, and seek to impress claims for damages. Interrogatories have heretofore been filed by the claimants, and exceptions sustained to some and answers made to others. The claimants now seek by motion to require the petitioner to produce:

First. "All letters, reports, statements, telegrams, cablegrams, wireless and radio messages, memoranda, containing substance of all telephone and radio messages, paper writings, and communications of every nature and kind, had or passing between any of the officers, agents, attorneys, and employees" of the petitioner, pertaining to the loss of the steamship Princess Sophia, to "its officers, its crew, its stranding upon Vanderbilt Reef, while upon Vanderbilt Reef its foundering, the passengers thereon, the keeping or removing of the passengers and crew from said wreck, the disposition of the bodies of the passengers or their effects, and of the salving of said steamship."

Second. "Also all telegrams, cablegrams, radiograms, and messages of any kind, letters and memoranda, and substance of any conversation or communication by telephone, wireless, or otherwise, sent by any of the officers or agents of the petitioner to any of the officers or crew of the steamship Princess Sophia, or received from any of the officers or crew of the Princess Sophia, by any of the agents or officers of the petitioner on the 23d, 24th, 25th, and 26th days of October, 1918."

Third. "Also all letters, telegrams, cablegrams, wireless messages, and agreements between the agents of the petitioner and their attorneys, and between the attorneys of the petitioner, and also between Capt. Leadbetter and E. M. Miller of the Cedar and Capt. J. J. Miller of the King & Winge, pertaining in any manner to their appearing before and giving testimony before the Canada commission appointed to investigate said wreck, showing the amount of money paid to each of them for going to and appearing before said commission and giving their testimony, or for any other purpose whatsoever, or at all, together with a statement of the costs and expenses and of all moneys paid out or expended, and to whom paid, by the petitioner, in connection with the stranding and foundering of said steamship and the

loss of the lives of the passengers thereon, and of all vessels sent to stand by said wreck, or subsequent services rendered in connection with the salving of said wreck, gathering and disposing of the bodies of the passengers, with a copy of the contracts, if any, made with all of said vessels as to their going to said wreck, and the parties thereof standing by or rendering such services.".

Fourth. Request is made for the passenger list, names, destination, class, also names, ages, and residences and position of every officer and member of the crew upon the instant voyage, and also upon the three prior voyages of said steamship.

Fifth. To produce and leave with the special commissioner, for claimants' proctors' inspection, "use and evidence," all the ship's logs, and all the pilot house logs and scrap logs of the steamship Princess Sophia, covering a period of three years immediately prior to the foundering, and all reports made by any of the officers of the crew for three years, and all its records and routes and courses navigated through the three years immediately prior to the foundering, and all reports, records, and accounts kept and made by the officers in charge of said ship, showing the number of times said steamship had been wrecked and gone ashore, and under what circumstances and conditions, or whether said steamship ran ashore and on reefs during the six years immediately prior to foundering of said steamship.

Sixth. To produce and leave with the special commissioner, "for inspection of claimants' proctors and use and evidence, all of the telegrams, reports, papers, logs, maps, charts, and exhibits withdrawn by the petitioner, its officers, agents, or attorneys from the office of the deputy Minister of Marine of the Dominion of Canada, at Ottawa, Canada," being exhibits introduced before commission appointed by the Minister of Marine of the Dominion of Canada for the purpose of investigating the Princess Sophia wreck.

Seventh. To produce and leave with the special commissioner, "for inspection of claimants' proctor and use as evidence," all diaries, letters, telegrams, notes, and memoranda of every kind and description, made by any of the passengers of or concerning said wreck, or found upon the bodies of any of the passengers, or floated from said wreck, or about said wreck, in the possession of the petitioner or any of its officers, agents, or employees.

In support of the motion claimants cite sections 724 and 862, Rev. Stat. (Comp. St. §§ 1469, 1470), and equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv). Section 724 reads:

"In the trial of actions at law, the courts of the United States may, on motion and due notice thereof, require the parties to produce books or writings in their possession or power, which contain evidence pertaining to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery. * * *"

Section 862 reads:

"The mode of proof in causes of equity and of admiralty and maritime jurisdiction shall be according to rules now or hereafter prescribed by the Supreme Court, except as herein specially provided."

Equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv) reads:

"The plaintiff at any time after filing the bill, and not later than twenty-one days after the joinder of issue, and the defendant at any time after filing his answer and not later than twenty-one days after the joinder of issue, and either party at any time thereafter, by leave of the court or judge, may file interrogatories in writing for the discovery by the opposite party or parties of facts and documents material to the support or defense of the cause, with a note at the foot thereof stating which of the interrogatories each of the parties is required to answer, but no party shall file more than one set of interrogatories to the same party without leave of the court or judge."

Section 917, R. S. (Comp. St. § 1543), reads:

"The Supreme Court shall have power to prescribe, from time to time, and in any manner not inconsistent with laws of the United States, the * * * modes of * * * taking and obtaining evidence, of obtaining discovery, * * * to be used, in suits in equity or admiralty, by the * * * district courts."

Section 918, R. S. (Comp. St. § 1544), provides that:

"The several * * * District Courts may, from time to time, * * * make rules * * * as may be necessary or convenient for the advancement of justice and the prevention of delays in proceedings."

As to admiralty and maritime cases on the instance side of the court, in pursuance of Act Aug. 23, 1842, c. 188, 5 Stat. 516, rule 27 (29 Sup. Ct. xlii) provides:

"In all libels in causes of civil and maritime jurisdiction, whether in rem or in personam, the answer of the defendant to the allegations in the libel shall be on oath or solemn affirmation, and the answer shall be full and explicit and distinct to each separate article and separate allegation in the libel, in the same order as numbered in the libel, and shall also answer in like manner each interrogatory propounded at the close of the libel."

Rule 32 (29 Sup. Ct. xlii) provides:

"The defendant shall have a right to require the personal answer of the libelant upon oath or solemn affirmation to any interrogatories which he may, at the close of his answer, propound to the libelant touching any matters charged in the libel, or touching any matter of defense set up in the answer, subject to the like exception as to matters which shall expose the libelant to any prosecution or punishment or forfeiture as is provided in the thirty-first rule. In default of due answer by the libelant to such interrogatories, the court may adjudge the libelant to be in default, and dismiss the libel, or may compel his answer in the premises by attachment, or take the subject-matter of the interrogatory pro confesso in favor of the defendant, as the court, in its discretion, shall deem most fit to promote public justice."

[1] The rules promulgate under the act of 1842, supra, comprehend a complete procedure in admiralty and are independent of any other rules promulgated by the Supreme Court relating to equity procedure, and provide a procedure for discovery of facts as appears in rules 27 and 32, supra. While, as stated by the claimant, admiralty courts proceed upon equitable principles, and the provisions of the equity rules should obtain, since admiralty courts are not restricted by the technical rules of the common law, the admiralty court has laid down its rules of procedure and, as is stated in The Fred E. Richards (D. C.) 248 Fed. 956, it would result in confusion to borrow equity rules in an admiralty procedure.

[2] Judge Hand, in Coronet Phosphate Co. (D. C.) 260 Fed. 846, said:

"Interrogatories * * * serve two purposes, to amplify the pleadings of the party interrogated, and to procure evidence in support of the libel or defense of the party interrogated. * * * They should not, however, be used merely to fish into the evidence which the party interrogated may produce in support of his own allegations."

If this is true of the procedure under express admiralty rule, much more emphatic is the thought when it is attempted under a borrowed rule.

[3, 4] Under rule 32 claimants have a right to interrogate petitioner upon any matter charged in the libel, all documents forming the subject-matter of the litigation may be the subject of interrogatories. The letters or telegrams, etc., communicated to the petitioner are not an issue in the pleadings, but are only sought as evidentiary matter. While claimants may interrogate a petitioner upon any material fact in issue, the rule requires only the oath in answer thereto, and this has been given in the interrogatories propounded. There appears no rule applicable to the inspection of documents. Judge Brown, in Havermeyers, etc., v. Compania, etc. (D. C.) 43 Fed. 90, said:

"The English practice, which provides for the production of documents * * * in admiralty, is founded upon express statutory provisions and definite rules of court. * * * We have no such statute applicable to proceedings in admiralty."

[5] Section 724, supra, relates to actions at law only. Judge Brown, in Havermeyers, supra, reviewing the modes of discovery, predicates the present right upon the principle of actio ad exhibendum, and while in our admiralty proceedings the distinctions of form are disregarded, exhibitions of documents should have regard to the substantial rights, and as the basis for right to the discovery special right must appear upon the face of the pleadings. 2 Story, Eq. Jurisprudence, §§ 1490, 1491. The practice requiring an exhibition of all correspondence, accounts, books of entry, etc., says Judge Brown—

"is repugnant to the spirit of our jurisprudence, which has always jealously guarded the private affairs of litigants from the unnecessary prying of their adversaries. No precedent can be found for it, either in equity or admiralty."

[6] The motion of the claimants could scarcely be more far-reaching. The communications sought, as now presented, appear privileged, and a production for inspection may not be required under any law or rule. Cully v. N. P. Ry. Co., 35 Wash. 241, 77 Pac. 202. It appears that some of the matter sought by the claimants is a matter of public record before a special court of inquiry in British Columbia, and claimants have access thereto, and it was stated at bar that they have copies of such hearing, except maps, and some of the messages sought are given in answers to interrogatories propounded in this proceeding. The Supreme Court in Carpenter v. Winn, 221 U. S. 533, 31 Sup. Ct. 683, 55 L. Ed. 842, said:

" * * * A bill of discovery cannot be used merely for the purpose of enabling the plaintiff in such a bill to pry into the case of his adversary to learn its strength or weakness. A discovery sought upon suspicion, surmise, or vague guesses is called a 'fishing bill,' and will be dismissed. Story, Eq. Pl. §§ 320 to 325. Such a bill must seek only evidence which is material to the support of the complainant's own case, and prying into the nature of his adversary's case will not be tolerated."

[7, 8] While ample powers are given to courts of admiralty and maritime jurisdiction as to forms and modes of procedure, it is a power "held in trust for the benefit of litigants," and to be applied to the practical needs of justice. The Alert, 40 Fed. 838; The Hudson (D. C.) 15 Fed. 175; Deslions v. La Compagnie, etc., 210 U. S. 95,

28 Sup. Ct. 664, 52 L. Ed. 973. This power, however, must not be arbitrarily applied, but must have relation to rules of evidence, or promulgated rules of court, or statutes duly enacted. As now advised, claimants, it appears, have a copy or have access to the public record of the evidence before the Canadian commission appointed by the Dominion government to inquire into the sinking of the steamship Sophia, where the information here sought is disclosed. If that record discloses documents, etc., material to the tendered issue, claimants would in an action at law be required to specify the particular letter or message, etc., desired, giving the contents and relevancy to his contention under section 724, R. S.

The motion is denied, except that the log for the steamship Sophia for the three years immediately preceding the sinking shall be produced before or at the trial.