CAROL R. HEIDEBRINK, ET AL, *Petitioners*, v. NOBUO
MORIWAKI, ET AL, *Respondents*.

*H. K. Dano, Theodore G. Lucas,* and *Dano, Cone, Fraser
& Gilreath,* for petitioners.

*Gregory J. Arpin* and *Layman, Loft, Smythe & Arpin,*
for respondents.

McInturff, J.—Plaintiffs, Carol R. and Gary T. Heide-brink, were granted discretionary review of a trial court ruling denying production of a statement made by defendant, Nobuo Moriwaki, to his insurance company's investigator.

On March 15, 1982, Carol Heidebrink was driving her car west on Highway 17 on the outskirts of Moses Lake, Washington. Her vehicle was suddenly surrounded by a dense cloud of smoke which blinded her; her vehicle collided with the rear of a pickup truck. The Heidebrink car was one of several involved in a chain collision. The Heidebrinks allege the smoke was a direct result of Mr. Moriwaki burning grain stubble on the adjacent field.

Shortly after the accident, an unknown involved party contacted Mr. Moriwaki's insurance company. Insurance company investigator Tim Dahmen telephoned Mr. Moriwaki long distance from Spokane on March 17, 1982, and recorded the statement which the Heidebrinks seek to discover. Mr. Moriwaki objects to its discovery on two grounds: (1) the statement is protected by the attorney-client privilege; and (2) the statement is immune from discovery as a work product of Mr. Moriwaki's attorney. The court ruled the statement was made in anticipation of litigation and was immune from discovery.

First, Mr. Moriwaki contends the statement is protected by the attorney-client privilege, which is set out in RCW 5.60.060(2):

An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.

The central purpose of the rule is to encourage free and open discussion between an attorney and his client by assuring the client that his information will not be disclosed to others either directly or indirectly. *State v. Chervenell,*

99 Wn.2d 309, 316, 662 P.2d 836 (1983). Our court noted the following limitation on the attorney–client privilege in *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968):

As the privilege may result in the exclusion of evidence which is otherwise relevant and material, contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege cannot be treated as absolute; but rather, must be strictly limited to the purpose for which it exists.

This philosophy represents a broad departure from that enunciated in *Cully v. Northern Pac. Ry.*, 35 Wash. 241, 246, 77 P. 202 (1904), cited by Mr. Moriwaki in support of his position. That case considered two interrogatories addressed to a defendant by an injured plaintiff wherein the plaintiff sought production of all reports related to the accident. The court denied the production in order to maintain the secrecy of the defendant's case. Such a rationale is directly contrary to the philosophy of the broad discovery rules adopted in the interim by Washington State.

Did the report taken by the investigator rise to the level of a privileged communication because of the alleged agency relationship between investigator and attorney? While Washington has not addressed this particular issue, there are cases throughout the nation which have ruled both ways on this particular issue. We first discuss those cases which hold the communication is privileged.

Stating the rationale for that rule is *Bellmann v. District Court*, 187 Colo. 350, 531 P.2d 632 (1975), which concerned the discoverability by the district attorney of a statement made to an insurance investigator by a man charged with vehicular homicide. Citing *People v. Ryan*, 30 Ill. 2d 456, 197 N.E.2d 15, 17 (1964), the court conceded that although such communications are normally made to a layman without involving a lawyer, the insured, through his contract, has delegated the conduct of the defense to his insurance company. Because the insured is not represented by counsel of his own choosing at the time the statement is made or

later during litigation

". . . we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." 197 N.E.2d at 17.

*Bellmann,* at 353. Similarly, *State ex rel. Cain v. Barker,* 540 S.W.2d 50 (Mo. 1976) adopted the same conclusion on the basis of *People v. Ryan, supra, Brakhage v. Graff,* 190 Neb. 53, 206 N.W.2d 45 (1973) and *Hollien v. Kaye,* 194 Misc. 821, 87 N.Y.S.2d 782, 785 (1949), from which the Missouri court's reasoning was similar to that found in *Bellmann,* but added the following:

"In our present complex society and vast use of motor vehicles, the insurance against liability on the part of owners of motor vehicles has become the rule rather than the exception. In fact, in some states such insurance is compulsory. We, in this state, have a modified form of compulsory insurance.

"It follows that in case of an accident, the owner of a motor vehicle is bound by the terms of his contract, to make a full and prompt report to his carrier. The assured should be encouraged to, rather than discouraged from, making a full and complete disclosure to his insurance carrier. Let us suppose that an assured does so and furnishes his statement to a lay representative of his carrier, before its general counsel has ever heard of the case and could not yet be said to be the attorney for the assured; or before some other attorney is engaged to represent the assured, and that hence, it might be held that the statement may not come either within the letter or the spirit of Section 353, Civil Practice Act. Let us suppose further that the statement thus given by the assured to his carrier, in compliance with his contract, and on the assumption that he is furnishing the statement to the agency which he has paid to protect him, reveals the commission of acts which constitute the crime of culpable negligence. Should the assured be prevented from unbosoming himself of the true facts concerning an accident to the very entity, which, either through voluntary choice or under legal compulsion, he has paid to protect his interests in the event of an accident, through fear that his statement

could be reached by the person who will instigate against him either civil or criminal proceedings or both? Or should fear of self–incrimination or fear of a recovery beyond policy limits subjugate the assured to the point of concealing the true facts to the very one whom he has paid in advance to protect him in just such a contingency.

"It seems to this court that it would be contrary to sound public policy to permit the discovery and inspection of statements of a defendant or a prospective defendant made to his own insurance carrier, whether made before or after suit is instituted or to its lay representatives, either before or after an attorney has been formally selected by the carrier to represent its assured."[2]

[2]Other cases supporting the result we reach include *Heffron v. Los Angeles Transit Lines,* 170 Cal.App.2d 709, 339 P.2d 567 (1959), *Grand Union Co. v. Patrick,* 247 So.2d 474 (Fla.App.1971), *Vann v. State,* 85 So.2d 133 (Fla.1956), *Kandel v. Tocher,* 22 A.D.2d 513, 256 N.Y.S.2d 898 (1965), *Cataldo v. County of Monroe,* 38 Misc.2d 768, 238 N.Y.S.2d 855 (Sup.Ct.1963), *In re Klemann,* 132 Ohio St. 187, 5 N.E.2d 492 (1936), *Westminster Airways, Ltd. v. Kuwait Oil Co.,* 1 K.B. 134, 22 A.L.R.2d 648 (Eng.1951).

*State ex rel. Cain,* at 56–57; *see also Thomas v. Harrison,* 634 P.2d 328 (Wyo. 1981).

Cases reaching the opposite conclusion rely on *Jacobi v. Podevels,* 23 Wis. 2d 152, 127 N.W.2d 73, 76 (1964), an automobile accident case where the motorist gave a written statement to an adjuster before any legal action was commenced. The Wisconsin court analyzed the problem in terms of the contractual obligations owed by the insured to his insurance company. Realizing the insurance company could use the statement to the insured's disadvantage the court reasoned the communication was not the same as that made between attorney and client. Additionally, the quest for full disclosure of the truth weighed heavily on the court's mind:

One of the fundamental policies of our law, and one which dominates in the absence of a special policy arising

in particular types of situations, is that the judicial system and rules of procedure should provide litigants with full access to all reasonable means of determining the truth. Secrecy of communication between one person and his attorney is one of the exceptions. It is based upon recognition of the value of legal advice and assistance based upon full information of the facts and the corollary that full disclosure to counsel will often be unlikely if there is fear that others will be able to compel a breach of the confidence.

Dean Wigmore has written:

"Nevertheless, the privilege [attorney–client] remains an exception to the general duty to disclose. . . . It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle."[4]

[4]8 Wigmore, Evidence (McNaughton rev. 1961), p. 554, sec. 2291.

*Jacobi,* at 156–57. The court concluded the statement was discoverable.

In accord with *Jacobi* is *Butler v. Doyle,* 112 Ariz. 522, 544 P.2d 204, 207 (1975), which cites extensively from *Jacobi,* then adds its own analysis:

The insurance carrier is more than a mere agent transmitting the policyholder's statement to the attorney hired to defend the insured.

The insurance carrier has the right to review and consider the statement submitted by the insured for any legitimate purpose connected with the business of the company. Coverage, cooperation, and renewal are a few of the matters, in addition to consideration of the potential claim, for which the insurer may use the statement of the insured. The use of the statement for a purpose adverse to the interest of the insured is certainly inconsistent with the claim of privilege upon his behalf.[1]

---

[1]*See also McDougall v. Dunn,* 468 F.2d 468 (4th Cir. 1972); *Gordon v. Robinson,* 109 F. Supp. 106 (W.D. Pa. 1952); *Kulich v. Murray,* 28 F. Supp. 675 (S.D.N.Y. 1939); *Whitaker v. Davis,* 45 F.R.D. 270 (W.D. Mo. 1968); *Gottlieb v. Bresler,* 24 F.R.D. 371 (D.D.C. 1959); *Burns v. Mulder,* 20 F.R.D. 605 (E.D. Pa. 1957); *Dennhardt v. Holman,* 12 F.R.D. 79 (D. Colo. 1951), where courts find the material discoverable, but not necessarily because of lack of privilege.

■ With respect to the facts before us, we believe the essence of the attorney–client privilege is the intent of the client at the time the communication is made. There must be a belief by the client that he is consulting a lawyer, either directly or through an agent, in his legal capacity and is seeking professional legal advice. *State v. Dorman,* 30 Wn. App. 351, 359, 633 P.2d 1340 (1981) (citing E. Cleary, *McCormick on Evidence* § 88 (2d ed. 1972)). There was no evidence such was Mr. Moriwaki's intent because: (1) The statement was not made by or at the direction of any attorney. (2) There was nothing in the record to indicate an intent on the part of the client that he was consulting with an attorney for the purpose of obtaining legal advice. (3) There was no pending litigation. (4) The insurance company conceivably had interests other than protecting the rights of the client; it was complying with the contractual obligations and was free to use the client's statement for purposes of renewing the policy, adjusting the rates or canceling the policy, which actions would have been adverse to Mr. Moriwaki's interest. Coupled with the lack of requisite intent and our reluctance to expand the attorney–client privilege to insurance company–client, is our strong support of a liberal discovery process which "provide[s] litigants with full access to all reasonable means of determining the truth." *Jacobi,* at 156–57. To hold otherwise would unnecessarily thwart the primary goal of our judicial system—justice. If the ascertainment of truth is inhibited, in this instance beyond the statutory attorney–client privilege, the foundation of truth for determining justice is undermined. We hold, therefore, the statement made to the insurance investigator was not privileged.

We must next consider whether the statement is immune from discovery under the work product doctrine, CR 26(b)(3):

> **(b) Scope of Discovery.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> . . .

(3) *Trial Preparation: Materials.* Subject to the provisions of subsection (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The Washington rule is borrowed directly from the federal discovery rule, which permits broad discovery. *Bushman v. New Holland Div. of Sperry Rand Corp.,* 83 Wn.2d 429, 434, 518 P.2d 1078 (1974). Since this is a case of first impression in Washington, it is helpful to look to federal cases for interpretation of the rule.

*Hickman v. Taylor,* 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947) is considered the landmark case establishing the work product doctrine. A tugboat owners' attorney privately interviewed survivors of an accident involving the tug, after communicating with potential claimants. The case established the work product doctrine to protect an attorney's working file from discovery because it fell outside the attorney–client privilege. The material was not discoverable absent a showing of necessity or undue prejudice. The work product exception, though not a privilege, occupies the middle ground between witness statements discoverable on a minimal showing of good cause and truly confidential attorney–client communications immune from discovery. There is no immunity for documents that were not prepared in anticipation of litigation. *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir. 1977); *Natta v. Hogan,* 392 F.2d 686 (10th Cir. 1968). *Diversified*

*Indus.* states at page 604:

> In 8 Wright & Miller, [*Federal Practice* §§ 2017, 2021–28,] pp. 198–99, it is said:
> . . . Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.

*See also In re Special September 1978 Grand Jury (II),* 640 F.2d 49 (7th Cir. 1980) (documents were not prepared in anticipation of litigation).

In *Hawkins v. District Court,* 638 P.2d 1372 (Colo. 1982), the Supreme Court of Colorado considered the issue of the availability of reports made by an insurance company while investigating a home fire. The insured sued for the full amount of the coverage and during the course of the litigation served interrogatories requesting the notes and investigative reports of the adjuster. The court held the insurance company had the burden to prove the material was collected in anticipation of litigation, and, absent such proof, the court would presume the material was collected in the ordinary course of business. The court thoroughly examined the history of the work product doctrine in light of differing views that arose concerning (1) whether discovery of such information required only a showing of relevancy and lack of privilege or an additional showing of necessity, (2) whether the doctrine extends beyond work actually performed by lawyers, (3) the relationship between the "good cause" requirement of CR 34 and the "necessity or justification" of the work product doctrine. At pages 1377–78 the court stated:

> Rule 26(b)(3) is not intended to protect from general discovery materials prepared in the ordinary course of

business. [Proposed Amendments to Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487 (1970), Advisory Committee's Note] at 501. Courts generally have held that reports made and statements taken by an insurance adjuster for an insurance company in the normal course of investigating a claim are prepared in the regular course of the company's business and, therefore, not in anticipation of litigation or for trial. The rationale for such an approach was cogently expressed in *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* 54 F.R.D. 367, 373 (D.C.N.D.Ill.1972):

"If . . . the law were as suggested by the plaintiff, *i.e.,* that after a claim has arisen, litigation may be deemed a contingency and any document prepared after such a claim has arisen is prepared in anticipation of litigation as concerns Rule 26(b)(3) irrespective of whether an attorney in the role of counselor has been consulted, hardly any document authored by or for an agent of an insurance company could even be discoverable without the showing of substantial need and undue hardship required by subsection (b)(3) of Rule 26. An insurance company by the nature of its business is not called into action until one of its insured has suffered some form of injury and has a potential claim against some other party and/or the insurer itself. At this point, the insurer must conduct a review of the factual data underlying the claim, presumably through the talents of agents or employees who summarize the data for middle—or upper—management, the latter deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter. The logical absurdity of the plaintiff's position is that, under its theory, the amendments to the discovery rules which were believed to be a liberalization of the scope of discovery would be a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds. We do not believe that Rule 26(b)(3) was designed to so insulate insurance companies merely because they always deal with potential claims. If this were true, they would be relieved of a substantial portion of the obligations of discovery imposed on parties generally that

are designed to insure that the fact finding process does not become reduced to gamesmanship that rewards parties for hiding or obscuring potentially significant facts."[2]

The trial court in the narrative report of proceedings stated:

He accepted the statement made by insurance investigator Dahmen in his affidavit that he had collected the Moriwakis' statement with the thought and anticipation that the matter would ultimately reach litigation.

He further stated Mrs. Heidebrink had presented no facts to controvert the specific information in Dahmen's affidavit.

However, we do not feel bound by an affidavit written and submitted 13 months after Mr. Moriwaki made his statement.

■ In line with the rule announced in *Hawkins*, we find the following facts to be controlling: At the time the statement was made (1) the insurance company had a contractual obligation to defend Mr. Moriwaki; (2) Mr. Moriwaki had a contractual obligation to cooperate with the insurance company; (3) no attorney had been retained to represent the insurance company or Mr. Moriwaki; (4) no specific claim had been filed against Mr. Moriwaki nor had any opposing attorney contacted the insurance company regarding payment of a claim; (5) it is the usual course of business for insurance companies to obtain statements from their insureds regarding payment of potential claims. Thus, we hold the court erred when it denied plaintiff's motion to compel response to request for production.

The cause is remanded to Superior Court; the insurance company is ordered to produce the statement.

MUNSON, C.J., and GREEN, J., concur.

Further reconsideration denied September 4, 1984.

Review granted by Supreme Court December 7, 1984.

---

[2]*See also* Comment, *Discovery of Attorney's Work Product,* 12 Gonz. L. Rev. 284 (1977).